Submitted on record and briefs February 10, reversed and remanded in part;
otherwise affirmed November 29, 1995, petition for review denied April 2, 1996
(323 Or 114)

Paul dePARRIE,
*Appellant,*

*v.*

CITY OF PORTLAND,
a municipal corporation of the State of Oregon;
County of Multnomah, a political subdivision
of the State of Oregon; Vera Katz individually and
as Mayor of the City of Portland;
Earl Blumenauer, individually and
as Commissioner of the City of Portland;
Gretchen Kafoury, individually and
as Commissioner of the City of Portland;
Mike Lindberg, individually and
as Commissioner of the City of Portland,
Charlie Hale, individually and
as Commissioner of the City of Portland,
Beverly Stein, individually and
as Chair of the Multnomah County
Board of Commissioners;
Dan Saltzman, individually and
as Commissioner of Multnomah County;
Gary Hansen, individually and
as Commissioner of Multnomah County,
Tanya Collier, individually and
as Commissioner of Multnomah County;
Sharron Kelley, individually and
as Commissioner of Multnomah County,
*Respondents.*

(9308-05495; CA A84037)

906 P2d 844

Paul deParrie filed the briefs *pro se* for appellant.

Tracy Pool Reeve, Deputy City Attorney, filed the brief for respondents City of Portland, Vera Katz, Earl Blumenauer, Gretchen Kafoury, Mike Lindberg and Charlie Hale.

Laurence Kressel, County Counsel, and Steven J. Nemirow, Assistant County Counsel, filed the brief for respondents Multnomah County, Beverly Stein, Dan Saltzman, Gary Hansen, Tanya Collier and Sharron Kelley.

Before Riggs, Presiding Judge, and Landau and Leeson, Judges.

LANDAU, J.

## LANDAU, J.

Plaintiff brought this action for a declaration that certain local government actions violate ORS 659.165(1), which prohibits the enactment or enforcement of a local government charter provision, ordinance, resolution or policy that either "singles out" or "grant[s] special rights, privileges or treatment" to citizens or groups of citizens on account of sexual orientation. Plaintiff also requested injunctive relief and reimbursement for funds unlawfully spent. ORS 244.100. Defendants — the City of Portland (the city), its mayor and commissioners, Multnomah County (the county) and its commissioners — moved to dismiss plaintiff's complaint for failure to state a claim on the ground that, among other things, the conduct alleged in the complaint did not constitute singling out or granting special rights, privileges or treatment to citizens or groups of citizens on account of sexual orientation. ORCP 21 A(8). The trial court granted those motions and entered judgment for all defendants on all claims. Plaintiff appeals, and we affirm in part and reverse in part.

■ In reviewing the trial court's dismissal of plaintiff's complaint for failure to state a claim, we assume the truth of all allegations of fact, as well as any reasonable inferences that may be drawn from them. *Otterness v. City of Waldport*, 130 Or App 550, 552, 883 P2d 228 (1994), *rev den* 320 Or 507 (1995). Plaintiff's complaint contains 11 claims for relief. Briefly, plaintiff alleges that the city or the county has singled out or granted special rights to citizens or groups of citizens on account of sexual orientation by: (1) maintaining a city and county Affirmative Action Office that "presents homosexuality as a non-relevant factor as regards city or county employment services"; (2) implementing a city and county "Future Focus Plan," by which homosexuality is portrayed to city and county workers as a "normal" or "acceptable" behavior; (3) offering city equal employment opportunity training that characterizes homosexuality as acceptable; (4) maintaining a city Bureau of Police "official liaison office" that holds public meetings "to discuss 'issues' related to homosexuals and homosexual behavior"; (5) expending city funds to recruit and offer employment to persons "solely on the basis of their sexual orientation," while not making

similar expenditures for recruiting and offering employment to nonhomosexuals; (6) authorizing the city Chief of Police to march in the city's annual "Gay Pride Parade"; (7) recruiting homosexuals to serve on a county Children and Youth Services Commission while not offering similar positions to others on account of sexual orientation; (8) offering counseling by the county's Children and Youth Services Commission to homosexual or bisexual youth; (9) expending public funds for county participation in two "Northwest Regional Sexual Minority Youth Conferences"; (10) teaching county employees "to accept the 'normalcy' or 'acceptability' of homosexuality and homosexual behavior"; and (11) allowing two county agencies to "promote acceptance" of homosexuality. Plaintiff alleges that, because defendants have violated ORS 659.165(1) in one or more of the foregoing ways, defendants are liable for the unlawful expenditure of public funds spent in the process of committing those violations.

On appeal, plaintiff argues that the trial court erred in dismissing his claims, because each of them alleges conduct that amounts to singling out and granting special rights to citizens or groups of citizens on account of sexual orientation. At the least, plaintiff argues, his complaint alleges conduct that constitutes singling out on the basis of sexual orientation. Plaintiff argues that "singl[ing] out" is more inclusive than "granting special rights" and encompasses identifying, denominating, acknowledging or approving homosexuality in any way.[1]

The city argues that singling out is not broader and more inclusive than granting special rights. Instead, it argues, the terms are complementary: "Singling out" is limited to conduct that adversely treats one citizen or group of citizens differently from others on the basis of sexual orientation, and "granting special rights" refers to conferring rights or privileges on one citizen or group of citizens and

---

[1] To illustrate his construction of the statute, plaintiff proposes an example of a local government funding two medical clinics, "one geared for heterosexuals, the other for homosexuals." According to plaintiff:

"Both [heterosexuals and homosexuals] could be said to be receiving the same services (and, indeed, might actually *be* receiving the same services), but the clinics are still 'singled out.' "

(Emphasis in original.)

not to others on the basis of sexual orientation. The city does not apply its proposed construction of the statute to each of plaintiff's claims; it does, however, contend that the complaint generally is legally insufficient.

According to the county, "singling out" refers to the deprivation of "a right established under the state or federal constitution[s]" on the basis of sexual orientation. The county further argues that "granting special rights" refers to extending "a new right" to some but not to others on the basis of sexual orientation. The county cites no authority for those assertions beyond the language of the statute itself.

■　To determine whether plaintiff has stated a claim for violation of ORS 659.165(1), we must ascertain what the statute requires. We begin with its text, properly read in context. If, upon examination of the text in context, the legislature's intentions remain unclear, we consider the legislative history as well. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 611-12, 859 P2d 1143 (1993).

■　ORS 659.165 provides:

"(1)　A political subdivision of the state may not enact or enforce any charter provision, ordinance, resolution or policy granting special rights, privileges or treatment to any citizen or group of citizens on account of sexual orientation, or enact or enforce any charter provision, ordinance, resolution or policy that singles out citizens or groups of citizens on account of sexual orientation.

"(2)　Any person who believes that a political subdivision has enacted or is enforcing a charter provision, ordinance, resolution or policy in violation of this section may bring an action in circuit court to have the charter provision, ordinance, resolution or policy declared invalid, for injunctive relief and for such other relief as the court may consider appropriate. The court shall award reasonable attorney fees and costs to a plaintiff who prevails in an action under this subsection."[2]

To state a claim under ORS 659.165(1), a plaintiff must allege three things. First, a plaintiff must allege that the defendant is a political subdivision of the state; the statute does not

---

[2] The 1995 addition to ORS 659.165(2) has no bearing on this decision. *See* Or Laws 1995, ch 618, §§ 117, 140.

contain any prohibition as to the conduct of individuals or nongovernmental entities. Second, a plaintiff must allege that the defendant has either enacted or enforced a "charter provision, ordinance, resolution or policy"; conduct other than enactment or enforcement of one of the four items listed in the statute does not fall within the purview of ORS 659.165(1). Third, a plaintiff must allege that the charter provision, ordinance, resolution or policy that has been enacted or is being enforced either "grant[s] special rights, privileges or treatment" to or "singles out" any citizen or group of citizens on account of sexual orientation.

In this case, none of the parties addresses on appeal the sufficiency of plaintiff's complaint with respect to the first two elements. Accordingly, we assume, for the purposes of this opinion, that the city and the county are political subdivisions that have either enacted or enforced a charter provision, ordinance, resolution or policy, and we limit our analysis to whether the complaint alleges facts from which it may be concluded that the city's or the county's enactment or enforcement effort "grant[s] special rights, privileges or treatment" or "singles out" a citizen or group of citizens on the basis of sexual orientation.

■■  The statute does not define the phrases "granting special rights, privileges or treatment" or "singles out." It does, however, prohibit enacting or enforcing charter provisions, ordinances, resolutions or policies that have either effect. It is apparent, therefore, that the legislature intended that "granting special rights, privileges or treatment" means something different from "singles out." Indeed, to construe the two terms as plaintiff suggests would mean that "singles out" includes "granting special rights, privileges or treatment," thus rendering the latter phrase completely redundant. We are reluctant to so completely rob enacted language of any significance. *Phelps and Nelson*, 122 Or App 410, 415, 857 P2d 900 (1993), *rev den* 318 Or 326 (1994).

That does not mean that we read the language of the statute to support the city's or the county's proposed construction. The statute does not speak of granting only new rights; it refers instead to "rights, privileges or treatment." Similarly, the language of the statute does not, by its terms, narrow its focus to the deprivation of rights guaranteed by

the state or federal constitutions; instead it refers more generally to "sing[ling] out" on the basis of sexual orientation.

That the text and context of the statute appear inconsistent with the parties' proposed constructions does not mean that those proposals are "wholly implausible." *Owens v. MVD*, 319 Or 259, 268, 875 P2d 463 (1994). Accordingly, we turn to the legislative history.

First, the legislative history demonstrates conclusively that plaintiff's proposed construction of the term "singles out" is incorrect. The author of the provision, Representative Shibley, explained in written testimony that

> "[ORS 659.165] uses the term 'special rights' to mean *treating individuals of one particular sexual orientation differently than individuals of a different sexual orientation.* Specifically, [ORS 659.165] prohibits preferential hiring and numerical quotas favoring gay and lesbian Oregonians.
>
> "While prohibiting 'special rights,' [ORS 659.165] also prohibits local communities from *singling out* gays and lesbians *for discrimination.*
>
> "This then, is [ORS 659.165]'s even-handedness: no 'special rights' and no discrimination, based on any particular sexual orientation."

Testimony, Senate Committee on Judiciary, HB 3500, July 27, 1993, Ex F. (Emphasis supplied.) That is echoed by further testimony that ORS 659.165 prohibits local laws and policies that

> "*either* single out *to deny something* that is enjoyed by all other citizens, *or* by *giving preference* to a group based on their particular sexual orientation that the rest of us do not enjoy."

Tape recording, Senate Committee on Judiciary, HB 3500, July 27, 1993, Tape 231, Side A at 230. Identical explanations of the bill were stated before the House, as well. Minutes, House Committee on Judiciary, HB 3500, June 30, 1993, at pp 1-2. That understanding also is reflected by the comments of legislators throughout the enactment process.

Second, the legislative history shows that the county's proposed construction likewise is incorrect. Representative Shibley, for example, described the reference to

"granting special rights, privileges or treatment" as encompassing broadly "treating individuals of one particular sexual orientation differently than individuals of a different sexual orientation," not merely the conferring of a right on the basis of sexual orientation. As an example of the sort of treatment proscribed by the law, she cited "preferential hiring and numerical quotas favoring gay and lesbian Oregonians." Representative Eighmey similarly stated that the reference to "special rights, privileges or treatment" broadly included "hiring quotas, affirmative action, preferential employment action, *et cetera,*" on the basis of sexual orientation. Tape recording, Senate Committee on Judiciary, HB 3500, July 27, 1993, Tape 232, Side A at 150. Those, and other similar, comments are reflected in the debates on the matter in both houses and throughout the enactment process. Tape recording, Senate Committee on Judiciary, HB 3500, July 27, 1993, Tape 231, Side A at 308; Testimony, Senate Committee on Judiciary, HB 3500, July 27, 1993, Ex E; Tape recording, House Floor Debate, HB 3500, July 6, 1993, Tape 166, Side A at 320; Tape recording, Senate Floor Debate, HB 3500, July 28, 1993, Tape 186, Side B at 69.

Our review of the text, context and legislative history of ORS 659.165, therefore, leads us to conclude that the legislature did not intend the reference to "singles out" to refer broadly to any identification, acknowledgement or approval of homosexuality; or that it be limited to the deprivation of a right established under the state or federal constitutions. It refers to discrimination on the basis of sexual orientation. Our review of the evidence of the legislature's intentions also leads us to conclude that the phrase "granting special rights, privileges or treatment" is not limited to the extension of a new right to some, but not others, on the basis of sexual orientation. It more broadly prohibits preferential "treatment," such as preferential employment action, on the basis of sexual orientation.

■ With the foregoing construction of ORS 659.165 in mind, we turn to the sufficiency of plaintiff's complaint. We begin by noting that none of plaintiff's claims alleges facts from which it reasonably can be concluded that either the city or the county has enacted a charter provision, ordinance, resolution or policy that "singles out" a citizen or group of

citizens on account of sexual orientation. Plaintiff has alleged that the city and the county have referred to homosexuality as "normal" or "acceptable," or that they have provided services to homosexuals. In no case, however, is there an allegation that any citizen or group of citizens has been discriminated against on account of sexual orientation.

As to plaintiff's allegations that the city and the county are "granting special rights, privileges or treatment," we conclude that all but two of plaintiff's claims are similarly defective. They fail to allege facts from which it reasonably could be concluded that a citizen or group of citizens has been granted any right, privilege or treatment on the basis of sexual orientation.

■ Plaintiff's fifth claim, however, includes allegations that the city expended funds to recruit homosexuals for city employment and that the city offered the benefit of employment to citizens or groups of citizens "solely on the basis of their homosexual sexual orientation." In the same claim, plaintiff further alleges that the city did not make "similar expenditures toward those of another sexual orientation." The city does not explain on appeal why that does not constitute "granting special rights, privileges or treatment" on the basis of sexual orientation. In its memorandum to the trial court, the city argued that the claim was insufficient because plaintiff had failed to allege that, in offering jobs to homosexuals, the city had not followed certain specified hiring policies and regulations. The statute contains no such limitation. It broadly prohibits the enactment of a charter provision, ordinance, resolution or policy that "grant[s] special rights, privileges or treatment" on account of sexual orientation. Offering employment to a citizen or group of citizens pursuant to a charter provision, ordinance, resolution or policy solely on the basis of sexual orientation does just that. Therefore, the trial court erred in dismissing plaintiff's fifth claim.

Plaintiff's seventh claim includes allegations that the county "specifically recruited homosexuals to serve on its Children & Youth Services Commission," while not offering similar positions to others on the basis of their sexual orientation. The county's only response is that its recruitment efforts constitute a form of "outreach," which does not create or deny benefits of any sort on the basis of sexual orientation.

That response, however, cannot be reconciled with the allegations of the complaint, which we must accept as true as pleaded. The trial court also erred in dismissing plaintiff's seventh claim.

Reversed and remanded as to the dismissal of plaintiff's fifth and seventh claims; otherwise affirmed.