Argued and submitted April 26, 1995, reversed and remanded for reconsideration
January 24, 1996

In the Matter of the Compensation of
Robert J. Carroll, Claimant.

Robert J. CARROLL,
*Petitioner,*

*v.*

BOISE CASCADE CORPORATION,
*Respondent.*

(93-09021; CA A84564)

910 P2d 1111

John M. Coletti argued the cause for petitioner. With him on the brief was Pozzi, Wilson & Atchison.

John E. Pollino argued the cause for respondent. On the brief were Chess Trethewy and Garrett, Hemann, Robertson, Paulus, Jennings & Comstock, P.C.

Before Riggs, Presiding Judge, and Landau and Leeson, Judges.

LANDAU, J.

## LANDAU, J.

Claimant seeks review of an order of the Workers' Compensation Board that reduced his award of unscheduled permanent partial disability (PPD). He argues that the rule that the Board applied to determine the award is invalid. We agree and reverse and remand for reconsideration.

The facts are undisputed. Claimant compensably injured his back and later was released to his regular work. The Notice of Closure did not award him PPD for the loss of function in his back. An Order on Reconsideration affirmed the Notice of Closure. Claimant requested a hearing. At the hearing, the referee awarded claimant 10 percent unscheduled PPD. The referee did so on the basis of a temporary rule, which provided that unscheduled PPD is to be determined first by assigning certain values to a claimant's age, education, adaptability and impairment and then by applying those values to the following formula: [(Age + Education) × Adaptability] + Impairment = PPD. WCD 3-1993 (Temp.) (June 17, 1993). The temporary rule provided that, when a claimant has returned to regular work, the value assigned to adaptability is a minimum value of 1. Applying that value, and others not in dispute, the referee calculated claimant's award as follows: [(Age + Education {4}) × Adaptability {1}] + Impairment {6} = 10.

Employer sought review by the Board. In the meantime, the temporary rule expired. The Board applied the prior rule, which was identical in all but one relevant respect. It provided that, when a claimant has returned to work, the adaptability factor must be assigned a value of zero. *Former* OAR 436-35-310(2) (1992).[1] Applying that rule, the Board calculated claimant's award as follows: [(Age + Education {4}) × Adaptability {0}] + Impairment {6} = 6. The effect of the Board's decision was to multiply claimant's age and education factors, which were assigned a combined value of 4, by zero, and thus convert their combined value to zero.

---

[1] *Former* OAR 436-35-310(2) (1992) provided:

"For workers who at the time of determination have a physician's release to regular work, or have either returned to or have the RFC for regular work or work requiring greater strength than work performed on the date of injury, the value for factor o[f] adaptability is 0."

The rule has since been amended and renumbered. *See* OAR 436-35-280.

The Board accordingly reduced claimant's award of unscheduled PPD to 6 percent.

■    On review, claimant argues that the Board erred in applying *former* OAR 436-35-310(2) (1992), which required the factor of adaptability to be assigned a minimum value of zero if a worker has returned to work. According to claimant, that rule violates ORS 656.214(5) and ORS 656.726(3)(f)(A). ORS 656.214(5) provides, in part, that

> "the criteria for rating of [unscheduled] disability shall be the permanent loss of earning capacity due to the compensable injury. Earning capacity is to be calculated using the standards specified in ORS 656.726(3)(f)."

ORS 656.726(3)(f)(A) provides:

> "The criteria for evaluation of disabilities under ORS 656.214(5) shall be permanent impairment due to the industrial injury as modified by the factors of age, education and adaptability to perform a given job."

Claimant argues that, because the factors of age and education are *multiplied* by the adaptability factor under the current rule, assigning a minimum value of zero to the adaptability factor in any case results in a zero value for those other factors. Thus, he contends, even if the age and education factors otherwise are greater than zero, they are deprived of any effect on the award determination. In other words, impairment is not permitted to be "modified" by the factors of age and education, contrary to the statute. Claimant relies on the Supreme Court's decision in *England v. Thunderbird*, 315 Or 633, 848 P2d 100 (1993), in which the court invalidated an earlier version of the same rule because of its incompatibility with an earlier version of the same statutes.

Employer argues that, although the multiplication of age and education factors by a minimum adaptability factor of zero results in a reduction of the age and adaptability factors to zero as well, the fact remains that impairment still is "modified" by those factors:

> "The modification in this scenario is simply to add zero to the impairment finding — the sum of which will be the impairment."

As for *England*, employer argues that the case is not controlling, because it concerned different rules and different statutes.

■     The challenged rule describes the formula for the calculation of "earning capacity," an inexact term. *Springfield Education Assn. v. School Dist.*, 290 Or 217, 223, 621 P2d 547 (1980). Accordingly, we review the validity of the rule for consistency with the relevant provisions of the workers' compensation statutes. *Id.* at 224-28; *SAIF v. Cline*, 135 Or App 155, 158, 897 P2d 1172, *rev den* 321 Or 560 (1995). In so doing, we attempt to discern the intentions of the legislature as to the meaning of those statutes, examining the text in context, including prior judicial construction of the statute. *State v. Guzek*, 322 Or 245, 253-55, 906 P2d 272 (1995). If necessary, we also examine the legislative history and other interpretive aids. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993).

The Supreme Court's decision in *England* provides context for our analysis of the parties' arguments. In that case, the court construed the 1987 version of ORS 656.214(5), which provided, in part:

"In all cases of injury resulting in permanent partial disability * * * the criteria for rating of disability shall be the permanent loss of earning capacity due to the compensable injury. Earning capacity is the ability to obtain and hold gainful employment in the broad field of general occupations, taking into consideration such factors as age, education, impairment and adaptability to perform a given job."

At that time, the Director's rule provided that, in calculating a worker's earning capacity, the factors of age, education and adaptability must be assigned a value of zero if the worker returned to his or her former employment. *Former* OAR 436-35-290(2) (1988); *former* OAR 436-35-300(2) (1988); *former* OAR 436-35-310(2) (1988). The claimant in *England* had compensably injured her neck but was able to continue working. The Board rated her PPD accordingly, assigning no value to her age, education and adaptability factors. She challenged the validity of the rule, arguing that, by assigning a zero value to her age, education and adaptability factors, the rule failed to "tak[e] into consideration" those factors as ORS 656.214(5) required.

The Supreme Court agreed, citing two grounds for its decision. First, it observed that the language of ORS 656.214(5) strongly suggested that the four listed factors *must* be considered:

"[T]he legislature chose to list the criteria for determining earning capacity and gainful employment by example, but did not use an exhaustive list of factors. The listing of representative factors was a direction to the agency that, in determining a worker's earning capacity, it consider such factors as age, education, impairment and adaptability, and other factors that affect one's earning capacity in a similar way. *The legislature directed that the four listed factors must be considered*, while allowing that other factors having the same characteristics may be considered as well."

315 Or at 638. (Emphasis supplied; citations omitted.) Second, it noted also that the statutory emphasis on earning *capacity*, as opposed to *earnings*, likewise suggests that merely returning to a former job does not obviate the need to take into account the factors of age, education and adaptability in rating disability:

"Further, the legislature has chosen permanent loss of *earning capacity*, rather than loss of *earnings*, as the criterion for rating of disability. * * * [P]ost-injury employment may establish *earnings*, but it does not necessarily establish earning *capacity*[.]"

*Id.* at 639. (Emphasis in original.) The court concluded that assigning a value of zero to the factors of age, education and adaptability, merely because a worker has returned to work, was contrary to the statutory requirements of "taking into consideration" those factors and of establishing the worker's earning capacity. *Id.*

The legislature amended ORS 656.214(5) in 1990.[2] However, in all material respects, the statute remains the same. It still provides that "the criteria for rating of disability shall be the permanent loss of earning capacity." ORS 656.214(5). And it provides that earning capacity is to be calculated by "using the standards specified in ORS 656.726-(3)(f)," which provides that earning capacity

---

[2] Or Laws 1990, ch 2, § 7 (Spec Sess). The legislature further amended the relevant statutes in 1995 in Senate Bill 369. Or Laws 1995, ch 332, §§ 17, 55, 55a. Those amendments, however, do not apply to this case. Or Laws 1995, ch 332, § 66(4).

"shall be permanent impairment due to the industrial injury as modified by the factors of age, education and adaptability to perform a given job."

ORS 656.726(3)(f)(A). The only discernible change is that, under the earlier version of the statute, earning capacity was to be calculated "taking into consideration" the factors of age, education and adaptability, while the current version provides that earning capacity is impairment "as modified by" those same factors.

■ We perceive no significant difference between requiring age, education and adaptability to be "considered" in calculating earning capacity and requiring that the calculation consist of impairment "as modified by" age, education and impairment.[3] The ordinary meaning of the term "modify" does not suggest any such difference.[4] Even assuming that a contrary reading is not "wholly implausible," *Owens v. MVD*, 319 Or 259, 268, 875 P2d 463 (1994); *deParrie v. City of Portland*, 138 Or App 105, 112, 906 P2d 844 (1995), the legislative history expresses nothing to the contrary.[5]

In that light, we consider employer's argument that the assignment of a zero value to the age, education and adaptability factors upon a worker's return to work is consistent with the statute. Employer argues that treating the foregoing factors in that fashion satisfies the statutory requirement that impairment be "modified" by them. We disagree. First, the argument is contrary to the language of the statute. In this case, for example, there is no dispute that the combined values for the factors of age and education are four. Yet, under the current rule, claimant's impairment is

---

[3] Employer's only argument to the contrary is that, because the legislature changed the language, it must have intended the language to have the effect of changing the law. Not all changes in statutory language, however, are material. *Fifth Avenue Corp. v. Washington Co.*, 282 Or 591, 597-98, 581 P2d 50 (1978). Moreover, it does not necessarily follow that, merely because the legislature changed the language of the statute, it intended to accomplish what employer suggests.

[4] *Webster's Third New International Dictionary* 1452 (1976), defines "modify" as "to make minor changes in the form or structure of" and "to change the form or properties of for a definite purpose."

[5] The only reference to the amendment in the legislative history is a comment by Representative Mannix in a floor debate that "earning capacity will be defined and calculated according to specific standards." Minutes, House Special Session, May 7, 1990, p 31.

not "modified" in any sense by four. Thus, regardless of whether, in some abstract sense, multiplying a quantity by zero constitutes "modifying" it, in cases such as this, the combined age and education factors are not zero, and as such their values are not factored into the earning capacity equation at all. That result is contrary to the statute.

■        Next, employer argues that age and education are factored into the earning capacity equation; their values simply are reduced to zero when multiplied by the zero value for adaptability that is required upon a worker's return to work. Even if that were so, however, artificially reducing age, education or adaptability factors because of a worker's return to work is contrary to the statutory requirement that the rating of disability be calculated on the basis of earning *capacity*. As the Supreme Court said in *England*, "post-injury employment may establish *earnings*, but it does not necessarily establish earning *capacity*." *England*, 315 Or at 639; *see also Smith v. SAIF*, 302 Or 396, 401-02, 730 P2d 30 (1986) (" 'A [worker's] post-injury earnings is evidence which, depending upon the circumstances of an individual case, may be of great, little, or no importance in determining loss of earning capacity' "). We do not understand how it is any less error to assign artificially a zero value to age, education and employment in this case, because of claimant's return to work, than it was to do the same thing in *England*. As we have noted, both in this case and in *England*, the statutes each identify loss of earning *capacity*, not *earnings*, as the criterion for rating disability.

We conclude that *former* OAR 436-35-310(2) (1992) conflicts with ORS 656.214(5) and ORS 656.726(3)(f) and is, therefore, invalid.

Reversed and remanded for reconsideration.