Argued and submitted February 28; resubmitted In Banc July 10, convictions affirmed; remanded for resentencing August 28, petition for review denied December 17, 1996 (324 Or 487)

STATE OF OREGON,
*Respondent,*

*v.*

BRADLEY DAVID ALLISON,
*Appellant.*

(C9407 34404; CA A87094)

923 P2d 1224

In Banc

Jesse Wm. Barton, Deputy Public Defender, argued the cause for appellant. With him on the brief was Sally L. Avera, Public Defender.

Timothy A. Sylwester, Assistant Attorney General, argued the cause for respondent. With him on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

LANDAU, J.

Leeson, J., concurring.

**LANDAU, J.**

ORS 137.635, enacted by the voters in 1988, provides that, when a court sentences a convicted defendant on any of a list of enumerated felonies, and that defendant "has previously been convicted" of any of those felonies, the court must impose a determinate sentence that is not subject to reduction or parole. In this case, defendant was charged with several felonies listed in ORS 137.635, on the basis of crimes committed over the course of several years. After conviction of those charges in a single trial, the trial court imposed sentence on the first of them. On the remaining convictions, the trial court then reasoned that ORS 137.635 was applicable, defendant having "previously been convicted" of one of the enumerated felonies. Defendant appeals, arguing that the trial court erred in applying ORS 137.635. We affirm the convictions and remand for resentencing.

Defendant was charged by a single eight-count indictment with a series of crimes committed between January 1992 and July 1994. Only four of the counts are relevant to this appeal. In chronological order, they are: count 7 (first-degree burglary), count 3 (first-degree burglary), count 4 (first-degree burglary) and count 8 (first-degree robbery). Following a trial to the court, the court determined that defendant was guilty on counts 3, 4, 7 and 8. Before the court's determinations of guilt, defendant did not have a prior conviction for any offense listed in ORS 137.635. Both first-degree burglary and first-degree robbery are, however, listed in that statute.

At the sentencing hearing one month later, the court imposed sentences on each of the four counts. It began with count 7, and, in accordance with the applicable sentencing guidelines, it imposed the presumptive sentence of 36-months probation. At that point, over defendant's objections, the court concluded that defendant had "previously been convicted" of a crime listed in ORS 137.635 and, pursuant to that statute, imposed determinate sentences of 14 months, 16 months and 60 months for defendant's convictions on counts 3, 4 and 8, respectively.

On appeal, defendant argues that the trial court erred in applying ORS 137.635 to any of his convictions, because, at the time of sentencing, he had not "previously been convicted" of any of the offenses listed in the statute. The state asserts that the trial court was correct in doing so, because, at the time defendant was sentenced on counts 3, 4 and 8, he had "previously been convicted" of count 7, which is an offense listed in ORS 137.635. According to the state, a "conviction" occurs "upon the imposition of sentence in open court." Thus, it reasons, once defendant had been sentenced on count 7, as to the remaining counts, he had "previously been convicted." In support of its proposed construction, the state relies on *State v. Bucholz*, 317 Or 309, 855 P2d 1100 (1993), in which the Supreme Court construed a related statute adopted after the enactment of ORS 137.635.

Defendant replies that the state's reading of the statute establishes, at most, the existence of an ambiguity, which justifies examination of the legislative history. That history, defendant contends, conclusively proves that the purpose of the statute was to punish "repeat offenders" who, after having already been found guilty, sentenced and had both matters affirmed on appeal, do not learn from their mistakes and commit additional crimes. In that light, defendant argues, it is clear that the statute's reference to "previously * * * convicted" means convicted prior to the commission of the crimes for which a defendant is currently being sentenced. The state argues that we should not look to the legislative history, because the statute is plain on its face. In any event, it argues, "repeat offenders" are simply people who commit more than one crime.

We review the trial court's decision as a matter of law, to determine whether the court correctly applied the statute. ORS 138.222(4)(a); *State v. Graham*, 125 Or App 516, 519, 865 P2d 490 (1993).

■■ In interpreting a statute enacted by initiative, we apply standard principles of statutory construction. *Ecumenical Ministries v. Oregon State Lottery Comm.*, 318 Or 551, 559, 871 P2d 106 (1994). We attempt to ascertain the intention of the voters, looking first to the text of the measure in its context. If that inquiry does not clearly reveal the voters'

intention, we also examine the legislative history and, if necessary, other aids to construction. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993).

The text of the statute, as originally enacted by the voters, provides, in relevant part:

> "(1) When, in the case of a felony described in subsection (2) of this section, a court sentences a convicted defendant who has previously been convicted of any felony designated in subsection (2) of this section, the sentence shall not be an indeterminate sentence to which the defendant otherwise would be subject under ORS 137.120, but, unless it imposes a death penalty under ORS 163.105, the court shall impose a determinate sentence, the length of which the court shall determine, to the custody of the Department of Corrections. Any mandatory minimum sentence otherwise provided by law shall apply. The sentence shall not exceed the maximum sentence otherwise provided by law in such cases. The convicted defendant who is subject to this section shall not be eligible for probation. The convicted defendant shall serve the entire sentence imposed by the court and shall not, during the service of such a sentence, be eligible for parole or any form of temporary leave from custody. The person shall not be eligible for any reduction in sentence pursuant to ORS 421.120.

> "(2) Felonies to which subsection (1) of this section apply include and are limited to:

> "* * * * *

> "(h) Burglary in the first degree * * *.

> "* * * * *

> "(j) Robbery in the first degree * * *."

ORS 137.635 (1991).[1] The language at issue is the phrase "[w]hen * * * a court sentences a convicted defendant who has previously been convicted" of a crime listed in ORS 137.635(2). More particularly, the question is what the voters intended by the use of the words "previously * * * convicted" in that statute.

---

[1] ORS 137.635 has since been amended. *See* Or Laws 1993, ch 692, § 5; Or Laws 1995, ch 79, § 49. The amendments do not affect the substance of our analysis.

■    The word "conviction" has two generally accepted meanings. As the Supreme Court explained in *Vasquez v. Courtney*, 272 Or 477, 480, 537 P2d 536 (1975):

> "The first [meaning] refers to a finding of guilt by a plea or verdict. The second, more technical, meaning refers to the final judgment entered on a plea or verdict of guilt. In the latter case conviction has not been accomplished until the judgment is made by the court."

To determine which meaning is applicable to ORS 137.635, we consider the manner in which the term is used in the statute itself. *See State v. Smith*, 298 Or 173, 182, 691 P2d 89 (1984) (concluding that, as used in OEC 609(1), the term "convicted" refers only to a finding of guilt). From the manner in which the term is used in ORS 137.635, it is clear that the term "conviction" refers to the first of the two accepted meanings. Several times, the statute uses the term "convicted defendant" to refer to a defendant who has been found guilty of a listed offense but has not yet been sentenced.

Given the apparent meaning of the term "convicted," we must ascertain the intended meaning of the reference to a convicted defendant who has "previously been convicted" of a crime listed in ORS 137.635(2). The term "previous" is generally understood to mean "going or existing before in time: earlier." *Webster's Third New International Dictionary* 1798 (unabridged 1976). By itself, that definition seems straightforward enough. The problem is that it establishes that "previous" has meaning only in relation to another event, and the language of the statute provides few clues as to what the voters intended that other event to be. The statute, in other words, says that a convicted defendant who has "previously been convicted" of a listed crime is subject to determinate sentencing, but it does not say "previous" to what event the earlier conviction must have taken place. The statute does not say, for example, that it applies to a convicted defendant who, "previous to the sentencing" or "previous to committing the crime of which defendant has been found guilty" or "previous to" any other specified event, has been convicted of another crime listed in the statute. It says only that it applies when a convicted defendant "has previously been convicted"

of a listed crime. Thus, we must determine the prior event to which the voters intended "previously" to refer.

4.     At the outset, it bears emphasis that, in examining the statutory language, we are permitted to rest on a "first level," textual analysis only if the words will permit a single construction and all other possibilities are "wholly implausible." *Owens v. MVD*, 319 Or 259, 268, 875 P2d 463 (1994); *Carroll v. Boise Cascade Corp.*, 138 Or App 610, 616, 910 P2d 1111 (1996). As a result, our initial task is to determine whether the text of the statute permits one, and only one, plausible construction.

So far as we can tell, there are at least three possibilities. First, a defendant who has "previously been convicted" could refer to a defendant who, *at any time before the sentencing*, has been found guilty of a crime listed in ORS 137.635(2). That is the construction urged by the state. It certainly is suggested by the phrasing of the statute:

"*When * * * a court sentences* a convicted defendant who has previously been convicted * * *."

ORS 137.635(1) (emphasis supplied). Given that a defendant already has been found guilty of a listed crime before sentencing, however, he or she *always* will have been "previously" convicted of a listed crime. Thus, any conviction, even a first-time conviction of a single crime, would constitute a "previous conviction" under the statute. Such a construction is unlikely; it effectively reads out of the statute any distinction between a defendant's "conviction" and a "previous conviction." As legislation is not always free of redundancy, however, we do not conclude that the construction is "wholly implausible." *Owens*, 319 Or at 268; *Carroll*, 138 Or at 616.

Second, the statute could be read to mean that a person who has just been found guilty of one of the listed crimes may be subject to determinate sentencing if, *at any time before that conviction*, that person had been convicted of a listed crime. That is the construction adopted by the concurrence. Under that construction, there is a distinction drawn between the "conviction" that is the subject of the sentence yet to be imposed and the "previous conviction." That construction, however, does not draw any distinction as to when

the crimes were committed. Thus, because of the fortuity of a court's scheduling or a prosecutor's method of charging, a defendant who committed two separate crimes may end up receiving a conviction on the later crime first, resulting in a "previous conviction" on a subsequently committed crime. That certainly is an odd result. Such a construction also would require sentencing under ORS 137.635 if a defendant committed a single criminal act that gave rise to multiple charges in a single indictment; assuming that a conviction on the first charge could be considered "previous" to convictions on the later charges, a defendant could be sentenced under the stiffer penalties of the statute on the basis of a single, first-time criminal act. That, too, strikes us as an odd result. Nevertheless, the second alternative is at least superficially consistent with the statutory language and plausibly could be what the voters intended. We do not, therefore, reject it as being wholly implausible.

Third, the statute could be read to mean that a person who has just been found guilty of one of the crimes listed in ORS 137.635(2) may be subject to the statute if he or she had been found guilty of another listed crime, not merely any time before sentencing, but *before commission of the crime for which defendant is being sentenced.* That is the construction advanced by defendant. As in the case of the second alternative construction, there is a distinction maintained between a "conviction" and a "previous conviction." In contrast with the second alternative, however, this one does not lead to any absurd or unlikely results.

To the contrary, this construction comports with the manner in which the term "previous conviction" generally is understood in habitual offender statutes and the manner in which that term, and others like it, have been construed in most other jurisdictions in which habitual offender statutes have been adopted. *See, e.g.,* Arthur W. Campbell, *Law of Sentencing* § 7:5 at 158 (2d ed 1991) ("As a matter of logic, before a prior conviction can trigger repeat offender status, the prior must precede the commission of the principal offense."); Cynthia L. Sletto, Annotation, *Chronological or Procedural Sequence of Former Convictions as Affecting Enhancement of Penalty Under Habitual Offender Statutes,* 7 ALR 5th 263, 289 (1992) ("The prevalent view is that

enhanced punishment cannot be imposed unless all of the defendant's prior convictions preceded commission of the principal offense, and each prior offense and conviction occurred in chronological sequence.").

For example, in *State v. Carlson*, 560 P2d 26 (Alaska 1977), the Alaska Supreme Court confronted language identical in all material respects to the language before us. The disputed statute provided:

> "A person convicted of a felony in this state *who has been previously convicted* of a felony in this state or elsewhere"

is subject to enhanced penalties of imprisonment. *Former* AS 12.55.050, *repealed by* AK Session Laws 1978, ch 166, § 12 (emphasis added). The court held that "previously convicted" meant previous to the *commission* of the crime for which the defendant was to be sentenced. The court noted that the statute did not spell out precisely when the previous conviction had to occur to trigger the stiffer penalties of the statute. It reasoned, however, that its construction was the only one that adhered to the language of the statute and comported with the policy underpinnings of habitual offender statutes:

> "[T]here are sound policy reasons for requiring each prior offense and conviction to follow in sequence in order to accumulate under AS 12.55.050. [The defendant] points out, and the state acknowledges, that when a convicted criminal has not taken advantage of the opportunity to reform and subsequently commits another crime, he may be considered a worse offender than one with no previous convictions. It is *then* reasonable to subject him to harsher sanctions."

*Carlson*, 560 P2d at 30 (emphasis supplied). The court noted that reading the statute to apply without regard to the sequence of the commission of the underlying crimes would mean that a defendant who had committed several crimes in a day would be treated the same as a defendant who persisted in committing the same number of crimes after having had opportunities to reform. That, the court held, "would distort the underlying purpose of this statute." *Id.*[2]

---

[2] AS 12.55.050 was later repealed. The new presumptive sentencing statute, however, retained the "previously convicted" feature. AS 12.55.155-12.55.175. And the courts have continued to construe "previously convicted" to mean convicted before the commission of the crime for which a defendant is about to be sentenced. *State v. Rastopsoff*, 659 P2d 630, 640 (Alaska App 1983).

Similarly, in *State v. Wilson*, 6 Kan App 2d 302, 627 P2d 1185, *aff'd* 230 Kan 287, 634 P2d 1078 (1981), the court was required to construe a statute containing virtually identical statutory language providing that "[e]very person convicted a second or more time of a felony" may be subject to increased punishment *"[i]f the defendant has previously been convicted"* of any of a list of felonies. KSA 1980 Supp 21-4504 (emphasis supplied). The court construed the statute as follows:

> "[I]t is necessary that each succeeding offense be committed after conviction for the previous offense. Otherwise stated, it is required that there be the commission and conviction of one offense, followed by the commission and conviction of a second offense, followed by the commission of the principal offense upon conviction of which sentence enhancement is sought."

*Wilson*, 627 P2d at 1189. The court explained that the foregoing interpretation was compelled by the language, by logic and by the objective of habitual offender statutes:

> "The basic philosophy underlying recidivist statutes might be expressed in this fashion: where the punishment imposed against an offender for violating the law has failed to deter him from further infractions, a harsher and more severe penalty is justified * * *."

*Id.* at 1188 (citation omitted). *See also People v. Nees*, 200 Colo 392, 396, 615 P2d 690, 693 (1980) ("The general rule is that penalty enhancement statutes for repeat offenders apply only if the presently charged offense was committed *after* there had been a *conviction* of any offenses sought to be used as a basis for the penalty enhancement." (emphasis in original)); *Graham v. State*, 435 NE2d 560, 561 (Ind 1982) (same); *Bray v. Commonwealth*, 703 SW2d 478, 479-80 (Ky 1986) (same); *Koonsman v. State*, 116 NM 112, 113-14, 860 P2d 754, 755-56 (1993) (same); *State v. Linam*, 93 NM 307, 309-10, 600 P2d 253, 255-56, *cert den* 444 US 846 (1979) (same); *State v. Gehrke*, 474 NW2d 722, 724-26 (SD 1991) (same).[3]

---

[3] In a minority of the jurisdictions having considered the matter, courts have concluded that the term "previously convicted" does not refer to convictions before the commission of the crime on which the defendant is about to be sentenced. In

It bears emphasis that we do not hold that the manner in which the term "previously convicted" has been construed in other states reveals what the voters of Oregon intended in adopting ORS 137.635. We do, however, conclude that such an extensive body of authority concerning the same or similar statutory language suggests that the third possible construction is not "wholly implausible." It is at least reasonably possible, in other words, that the Oregon voters intended that language to mean the same thing that a substantial number of courts around the country have concluded that it means. Accordingly, having identified more than one plausible construction of the statute, we turn to the legislative history.

In the case of statutes enacted by initiative, the "legislative history" of the law includes statements contained in the voters' pamphlet. *Ecumenical Ministries*, 318 Or at 559-60 n 8; *see PGE* 317 Or at 612 n 4 (same analytical structure applies to both constitutional provisions and statutes adopted by initiative). It also includes other "contemporaneous sources" such as newspaper stories, magazine articles and other reports from which it is likely that the voters would have derived information about the initiative. *Lipscomb v.*

each of those cases, the courts conclude that the term "previously convicted" is plain on its face and is capable of meaning only that the defendant must have been convicted of a crime at any time before conviction of the one on which he or she is about to be sentenced. *State ex rel Collins v. Superior Court in and for Maricopa*, 142 Ariz 280, 281-82, 689 P2d 539, 540-41 (1984) (recognizing that recidivist statutes are commonly understood to mean that for a conviction to be a "prior conviction," it must occur before the commission of the offense for which the defendant is receiving an enhanced sentence, but reaching a contrary result because the relevant statute's "plain language" specified that the time of commission was not controlling); *Cornwell v. United States*, 451 A2d 628, 629-30 (DC 1982) (reaching same conclusion based on "plain" language and legislative history indicating that the time of commission is not controlling); *Smith v. State*, 584 So2d 1107, 1108 (Fla App 1991), *rev den* 595 So2d 557 (Fla 1992), *overruled on other grounds by Jeffries v. State*, 610 So2d 440 (Fla 1992) (reaching same conclusion with one sentence discussion); *State v. Wade*, 467 NW2d 283, 285 (Iowa 1991) (recognizing that majority rule is that a conviction must precede the commission of an offense in order for that conviction to be used to enhance the sentence for the later offense, but concluding that the majority rule "must yield" to "clear," "specific" and "plain" language of the statute that adopts the minority rule).

We do not find those cases persuasive, because, at least in the context of the Oregon statute, there are multiple plausible constructions of the term, and, under the analysis required under *PGE*, we may not rest on an analysis of the text alone in such circumstances. *PGE*, 317 Or at 611-12.

*State Bd. of Higher Ed.*, 305 Or 472, 480-83, 753 P2d 939 (1988).

In this case, the Official 1988 Voters' Pamphlet reveals that ORS 137.635 was proposed to the voters in 1988 as Ballot Measure 4, the title of which appeared as follows:

"REQUIRES FULL SENTENCES WITHOUT PAROLE, PROBATION FOR CERTAIN REPEAT FELONIES"

*Official 1988 Voters' Pamphlet* at 17. The explanation of the measure likewise states that it is designed to change sentences for certain "repeat felony offenders." *Id.* at 18. An argument submitted by the sponsors of the measure, Oregonians Against Crime, contains the following statements:

"RAPISTS AND MURDERERS DON'T DESERVE A THIRD CHANCE!

"* * * * *

"Common sense dictates that two-time murderers, two-time rapists, and two-time armed robbers should serve their full sentences * * *.

"[Measure 4] takes violent career criminals off our streets * * *.

"* * * * *

"[Measure 4] puts repeat murderers, rapists and armed robbers on notice that Oregonians will no longer tolerate their violent activities."

*Id.* Other arguments in support of the measure state that the measure, if enacted, would apply to "criminals convicted of a second violent crime," "repeat felony offenders," "repeat criminals," "two-time murderers, rapists and armed robbers" and "career criminals." *Id.* at 19-20. Even the arguments in opposition state that the measure would apply to "second time felons." *Id.* at 24.

Newspaper accounts similarly contain frequent references to the measure as applying to "repeat offenders" and "career criminals." Indeed, nearly every one of over two dozen newspaper articles concerning Ballot Measure 4 that we surveyed refers to the measure in those terms.[4] Moreover, the

---

[4] *See, e.g.,* Oregonian, October 27, 1988, at C-3 ("Denny Smith initiative" bars "probation or parole for repeat felony offenders" and would require "second-time

contemporaneous sources use the terms in the same manner that they are used ordinarily in sentencing contexts. The ballot measure report prepared by the City Club of Portland, for example, refers to Ballot Measure 4 as applying to "repeat offenders," "second-time" criminals and "recidivists." The Oregonian, likewise, describes the effect of the measure as eliminating parole and probation "for already convicted felons *who later* commit" any of the ten enumerated felonies, clearly reflecting an assumption that the "previous convictions" referred to in the measure would precede the commission of the subject offense.[5]

■    We are mindful that legislative history, particularly the sort that may be created merely by the payment of a fee to have a point of view published in print, sometimes is an uncertain basis on which to determine the intended meaning of statutes. When the history reflects a fairly consistent point of view on an issue, however, we have greater reason to assume that such views were relied upon by the voting public and are obliged to give that history careful consideration. *See State v. Guzek*, 322 Or 245, 261, 906 P2d 272 (1995) (citation omitted) ("[i]n general, an examination of legislative history

---

offenders" to serve their full sentences); Statesman-Journal, September 7, 1988, at 6-A (Denny Smith letter to the editor: "keep repeat murderers and rapists behind bars"); Oregonian, September 1, 1988, at B-4 (an "initiative to wipe out parole for repeat offenders"); Statesman-Journal, August 28, 1988, at 2-G (editorial: Measure 4 will "require longer sentences for repeat offenders"); Statesman-Journal, August 28, 1988, at 4-G, (spokesman for Oregonians Against Crime: "Oregonians want career criminals locked up"); Oregonian, June 21, 1988, at B-1 ("an initiative that would prohibit parole or probation for criminals convicted of specified repeat felonies"); Oregonian, June 7, 1988, at A-1 ("The ballot measure would eliminate parole, probation or temporary leave for repeat offenders in serious felonies"; quotes Governor's legal counsel as saying that the law would force the state to release "first-time rapists" to make room for "second time burglars"); Register-Guard, June 7, 1988, at D-9 ("The measure would prohibit parole, temporary leave, or other forms of early release for repeat offenders * * *."); Statesman-Journal, March 28, 1988, at 6-A (opponent guest editorial contending measure would "deny early release to violent felony offenders who repeat the offense"); Statesman-Journal, March 6, 1988, at 3-G (Denny Smith guest editorial contending that the measure would "ensure that career criminals are in prison"); Oregonian, February 1, 1988, at B-3 (measure requires that "repeat violent felons—the so-called 'career criminals'—serve their entire prison sentences"); Statesman-Journal, January 24, 1988, at 2-G (editorial in support referring to measure designed "to keep career criminals off the streets"); Statesman-Journal, January 23, 1988, at 3-C ("repeat violent felons"); Statesman-Journal, January 22, 1988, at 1-C ("repeat offenders").

[5] Oregonian, October 27, 1988, at C-3.

is most useful when it is able to uncover the manifest general legislative intent behind an enactment").

In this case, the title, the explanation and the statements of proponents and opponents alike describe Ballot Measure 4 as applying to "repeat offenders," "second time felons" and similar characterizations. As we have noted, those terms have a generally-understood meaning: A repeat offender is one who has failed to respond to a conviction for an earlier crime. Moreover, in the legislative history of Ballot Measure 4, those terms are used in a manner strongly suggesting that the voters intended the statute to refer not merely to one who has, at some point in time, engaged in multiple criminal acts, but rather in the ordinary sense that we have described. For example, the sponsors of the measure, arguing in support of it, declared that two-time murderers, rapists and burglars "don't deserve a third chance." Obviously, if a defendant is to be deprived of a "third chance," there must have been a first and second chance, that is to say, a first and second opportunity to reform following convictions for the crimes committed. Similarly, newspaper summaries refer to the measure as applying to "already convicted felons" who "later commit" additional felonies.

Examining the text of ORS 137.635 in the light of its legislative history, it becomes evident that only one of the three alternative constructions of the statute is tenable. The first, requiring sentencing under that statute even for a first-time conviction of one of the predicate crimes, directly conflicts with the legislative history, which describes as the purpose of the enactment the imposition of tougher sentences for "repeat" offenders. A first-time offender convicted of a single felony is not, in any sense, a "repeat" offender.

The state insists that its construction of the statute comports with the manner in which the Supreme Court has construed related provisions of the sentencing guidelines statute in *State v. Bucholz*, 317 Or 309, 855 P2d 1100 (1993).[6]

---

[6] At issue in *Bucholz* was whether a conviction under one indictment could be considered as part of the defendant's "criminal history" when he was sentenced under a separate, second indictment at the same sentencing hearing. *Bucholz*, 317 Or at 311. The language of the applicable administrative rule, mandated by a 1989 statute, Oregon Laws 1989, chapter 790, section 98, provided that:

We find the state's argument unpersuasive for several reasons. First, the court in *Bucholz* construed a statute that was adopted by the voters *after* the voters enacted ORS 137.635. As a matter of common sense, the construction of a later-enacted statute cannot establish what the voters intended by an earlier enactment; the later statute did not even exist when the earlier one was enacted. Second, the statute in *Bucholz* is worded differently from ORS 137.635. In particular, it does not refer to a defendant who has "previously been convicted" before his or her sentencing. Indeed, the state's proposed construction of ORS 137.635 can be maintained only by giving the word "conviction" two entirely different meanings in the same sentence, without any evidence that that is what the voters intended.

Nor can the second construction, the one adopted by the concurrence, be squared with the history of the statute. That construction would require sentencing under the statute even when a defendant who has committed two criminal acts is convicted on the second act first. It also would require sentencing under the statute when a defendant has engaged in a single criminal episode that gives rise to multiple charges in a single indictment. Those results do not comport with the apparent purpose of the act, which was to impose tougher penalties on offenders who, having already been convicted of one crime, do not respond to the reformative influences of the criminal justice process and instead commit further crimes. As the sponsors put it, the statute was intended to prevent "career" criminals from getting a second or third "chance." The legislative history offers no suggestion that the purpose of the statute was to impose tougher penalties on a defendant simply because he or she has committed a series of criminal acts or has committed a single act that gives rise to a series of charges. Accordingly, we reject the second of the possible constructions of the statute.

---

"An offender's criminal history is based upon the number of * * * convictions * * * in the offender's criminal history *at the time the current crime* or crimes of conviction *is sentenced.*"

OAR 253-04-006(2) (emphasis supplied). The court construed the emphasized language to require consideration of the conviction under the defendant's first indictment. *Id.* at 313-19.

■ That leaves the third alternative, under which a defendant is subject to sentencing under the statute only if he or she has been convicted of a crime listed in the statute before committing the crime for which sentencing is about to take place. That construction accords with the language of the statute, it leads to no absurd or unreasonable results, and it is consistent with the purposes expressed in the legislative history. It is, therefore, the only plausible construction of ORS 137.635 that is consistent with the voters' intentions as revealed by the statute's text, context and legislative history.

We conclude that ORS 137.635 applies when a person who has been found guilty of one of the crimes listed in that statute already had been convicted of one of those crimes before committing the crime for which he or she is to be sentenced. The evidence is undisputed that defendant had not been convicted of any crime listed in ORS 137.635 before committing the crimes for which he was sentenced in this case. The trial court therefore erred in applying the statute.

Convictions affirmed; remanded for resentencing.

**LEESON, J.,** concurring.

The issue in this case is the meaning of the phrase, "previously been convicted," as it appears in ORS 137.635: "[w]hen * * * a court *sentences* a *convicted* defendant who has previously been convicted * * *." (Emphasis supplied.) The question is, previous to what? In my view, the plain language of the statute suggests two alternatives: a defendant must have been convicted of one crime before sentencing for the second crime or before conviction of the second crime. The majority accepts defendant's contention that there is a third alternative: a defendant is subject to sentencing under ORS 137.635 only if he or she has been convicted of a crime listed in the statute before *committing* the crime for which sentencing is about to occur. The statute says nothing about commission of another crime. The majority reads that requirement into ORS 137.635 based on an approach to statutory construction that I believe is faulty and that leads to a conclusion in this case that I believe is at odds with what the voters intended.

As a threshold matter, I agree with the majority that the word "conviction" has two generally-accepted meanings, the first referring to a finding of guilt and the second referring to a final judgment. *Vasquez v. Courtney*, 272 Or 477, 480, 537 P2d 536 (1975). I also agree that as used in ORS 137.635, the term "conviction" refers to a finding of guilt. Furthermore, I agree with the majority that the phrase "previously been convicted" in ORS 137.635 is susceptible to more than one interpretation and that resort to legislative history is required in order to determine what the voters intended when they enacted that phrase as part of Ballot Measure 4. Finally, I agree with the majority that the Supreme Court's decisions in *State v. Miller*, 317 Or 297, 855 P2d 1093 (1993) and *State v. Bucholz*, 317 Or 309, 855 P2d 1100 (1993) are inapplicable to the analysis of ORS 137.635.

I part company with the majority, because it reads into the statute a requirement that the statute does not contain and one that I do not believe was intended. The majority observes, correctly, that statements in the Voters' Pamphlet and in various newspapers indicate that Ballot Measure 4 targeted "repeat offenders." 143 Or App at 252-53. However, the majority then imposes on the statute what it terms the "generally-understood meaning" of "repeat offender": "one who has failed to respond to a conviction for an earlier crime." 143 Or App at 254. It concludes that, because Ballot Measure 4 was described as a repeat offender statute, the term "previous conviction" must mean what it generally means in habitual offender statutes in other jurisdictions: the prior offense must precede the commission of the principal offense. Consequently, it imports that meaning into ORS 137.635.

In support of its conclusion, the majority quotes from an annotation for the proposition that

> "the prevalent view is that enhanced punishment cannot be imposed unless all of the defendant's prior convictions preceded commission of the principal offense, and each prior offense and conviction occurred in chronological sequence." 7 ALR 5th 263, 289 (1992) (quoted in 143 Or App at 248-49).

Significantly, the majority fails to provide the context in which that statement appears:

> "*Courts adopting this view have reasoned that habitual offender statutes are intended to warn the potential career criminal of the consequences of persistent criminal activity, and to give the offender an opportunity to reform through exposure to the restraining influences of conviction and punishment before the more severe punishment of an habitual offender statute is imposed.* The offender is deemed incorrigible not so much because he or she has sinned more than once, but because the offender has demonstrated, through persistent criminal behavior, that he or she is not susceptible to the reforming influence of the conviction process." *Id.* (Emphasis supplied.)

I find nothing in the language of Ballot Measure 4 or its legislative history to suggest that the voters intended to offer repeat offenders "the reforming influences of the criminal conviction process" before subjecting them to the determinate sentences specified in that measure. The legislative history indicates that when supporters of Ballot Measure 4 referred to it as targeting "repeat offenders" they intended its plain, common-sense meaning: one who violates the law again. *See* Arthur W. Campbell, *Law of Sentencing*, § 7:5 at 156 (2d ed 1991) ("Repeat offender statutes vary widely concerning eligibility criteria and formulas by which to determine what the enhanced sentence may or must be."). Use of the term "repeat offenders" to describe the ballot measure does not transform the phrase "previously been convicted" into a term of art with a well-defined legal meaning that was intended by the voters. I believe that the majority errs in accepting defendant's third alternative in interpreting the meaning of "previously been convicted" in ORS 137.635.

In interpreting a statute enacted by initiative, we apply standard principles of statutory construction. *Ecumenical Ministries v. Oregon State Lottery Commission*, 318 Or 551, 559, 871 P2d 106 (1994); *PGE v. Bureau of Labor and Industries*, 317 Or 606, 612 n 4, 859 P2d 1143 (1993). Our purpose is to determine the intention of the voters, first by examining the text of the measure in its context, giving words of common usage their plain and ordinary meaning. *PGE*, 317 Or at 610-11. If the intent is still not clear, we then consider the legislative history "along with the text and context to determine whether *all of those together* make the legislative intent clear." *Id.* at 611-12. (Emphasis supplied.) To

resolve the ambiguity in the language of a measure adopted through the initiative process, we look to the ballot title, voters' pamphlet arguments and contemporaneous news reports and editorial comments. *See Ecumenical Ministries*, 318 Or at 560 and n 8 (prescribing same method of analysis for constitutional provision and statute proposed by initiative); *PGE*, 317 Or at 612 and n 4 (analytical template applies to statutes enacted by initiative or referendum).

In my view, the phrase, "previously been convicted," in ORS 137.635 has only two plausible meanings; namely, previous to *conviction* for the subject offense or previous to *sentencing* for the subject offense.[1] The language of the statute makes no reference to repeat offenders and contains no suggestion that it applies only to an individual who commits a listed crime after having been convicted of a predicate offense. We are precluded by ORS 174.010 from adding language to the statute. *See Fernandez v. Board of Parole*, 137 Or App 247, 252, 904 P2d 1071 (1995) (court is constrained by the reasonable construction of the language actually enacted).

I turn to the legislative history to determine which of the two plausible constructions was intended. The ballot title for Measure 4 explains that it would eliminate indeterminate sentences, probation and parole "for persons convicted of any of the [listed crimes] after previous conviction of any crime in the class." *Official 1988 Voters' Pamphlet* at 17. Similarly, the explanatory statement drafted by the bipartisan committee appointed to provide an impartial statement informs the reader that "Ballot Measure 4 applies to persons convicted of any of the following crimes after previous conviction of any crime in the class." *Id.* at 18. Both explanations make clear that "previously been convicted" of a predicate offense was intended to mean previous to conviction for the subject crime. No other statement submitted for publication in the voters pamphlet unequivocally expresses a contrary view.

---

[1] The majority appears to believe that previous to sentencing is a construction that is unlikely, because that construction would allow the previous conviction to be the same conviction for which the determinate sentence is to be imposed under the statute. 143 Or App at 247. However, context reveals that the "previous" conviction is to be a different conviction from the one that is the subject of sentencing under ORS 137.635(2).

Other sources of information that were available to the voters at the time Ballot Measure 4 was adopted reveal that it was proposed by former Congressman Denny Smith and Oregonians Against Crime, because, in Smith's words, "I think Oregonians are fed up with the crime epidemic and want to do something about it." Sarah B. Ames and Stan Federman, "Lawmaker Turns In Signatures For Oregon Anti-Crime Initiative," *The Oregonian*, June 7, 1988, at A1. According to Smith, "We've got to take the P out of parole and put it back into punishment." "Smith Says Get Tough On Crime," *Statesman-Journal*, February 21, 1988, at 6G. In a guest opinion in the *Statesman-Journal*, Smith described Ballot Measure 4 as an initiative measure "to deny early release to those convicted a second time of a violent felony." Denny Smith, "Oregonians Take The Initiative Against Crime," *Statesman-Journal*, March 6, 1988, at 3G. Newspaper reports explained Ballot Measure 4 this way:

> "Smith's initiative would require that criminals convicted on their second violent crime be required to serve their full sentence without parole." "Neil: Crime Initiative Ignores Cost," *Corvallis Gazette-Times*, January 20, 1988, at 1B.

> "Smith's initiative would simply lock up a certain group of twice-convicted felons without the possibility of early, supervised release." Steven P. Jackson, "Stopping Crime In Oregon," *Statesman-Journal*, August 28, 1988, at 1G.

> "Ballot Measure 4 would require that second-time offenders of some 10 serious felonies—ranging from murder to first-degree burglary—would have to serve their full sentences without possibility of parole or probation." Jeff Mapes, "Dire Predictions Quickly Fade As Measure 4 Gains Favor," *The Oregonian*, October 27, 1988, at 3C.

My review of the Voters' Pamphlet, the articles and commentaries on Ballot Measure 4 on file with the state library, and the report that appeared in the City Club of Portland Bulletin regarding the measure, reveals one consistent message: If Ballot Measure 4 were to become law, "Oregon criminals convicted of their second violent crime [would] serve their full sentence without parole." William R. Stone, "Many Ideas Combat Crime," *Statesman-Journal*, January 24, 1988, at 2G. Of all the accounts quoted by the majority, 143 Or App at 250-51 n 3, only one supports its construction

of ORS 137.635. That statement appeared in a sidebar to the article I quote above and stated that Ballot Measure 4 would "Eliminate 'indeterminate sentences,' probation and parole for already convicted felons who later commit murder, rape and some other sex crimes[.]" Mapes, "Dire Predictions." Other Oregonian articles gave other descriptions. For example, one stated that "Measure 4 eliminates parole for second-time felons," Steve Sherburne, "State's Proposal Less Costly, More Effective Against Crime," *The Oregonian*, November 4, 1988, at E11, while another stated that Measure 4 "would affect criminals who, after Jan. 1, 1990, are convicted more than once of murder or of [certain] first-degree charges." Ames and Federman, "Lawmaker Turns In Signatures."

Even if the majority's reading of the phrase, "previously been convicted," in ORS 137.635 were plausible, I find no suggestion in the legislative history that use of the terms "repeat offenders," "two-time offenders," career offenders" and "criminals convicted of a second violent crime" to describe the targets of Ballot Measure 4 meant that the voters intended it to be an habitual offender statute of the sort that the majority declares, namely, one aimed at giving offenders the opportunity to reform through exposure to the restraining influences of conviction and punishment before being exposed to more severe punishment. In Denny Smith's words, "A crime epidemic is ambushing Oregon citizens, and this action [Ballot Measure 4] is being taken to make the state safer." Rolla J. Crick, "Bereaved Mom Collects Most Petition Signatures," *The Oregonian*, March 8, 1988, at D14. I believe the majority errs in imputing to the voters an intention that they did not have and reading into ORS 137.635 a requirement that it does not contain.

Applying my construction of the statute to this case, I conclude that the subject convictions, *i.e.*, the convictions on counts 3, 4 and 8 to which the trial court applied ORS 137.635, were not preceded by a conviction on a predicate offense. Because it believed that sentencing was a component of conviction, the trial court concluded that defendant had been previously convicted of count 7 at the time that it sentenced him on counts 3, 4 and 8. Under the terms of the statute, however, defendant was "convicted" when the trial court entered its findings of guilt. The trial court found defendant

guilty of each of the indicted crimes at the same time after a single trial. However, convictions entered in the same proceeding are simultaneous. They are not sequential, based on the order of the court's findings. I conclude that two or more convictions entered in the same proceeding must be treated as a simultaneous conviction for purposes of ORS 137.635. Accordingly, I would hold that counts 7, 3, 4 and 8 should be regarded as a simultaneous conviction for the purpose of ORS 137.635 and that defendant had not "previously been convicted" of one of the crimes enumerated in ORS 137.635(2) at the time he was convicted on counts 3, 4 and 8. Consequently, despite my disagreement with its construction of the term "previously been convicted" in ORS 137.635, I agree with the majority that the trial court erred in applying the statute in this to defendant's convictions on counts 3, 4 and 8.

Deits, Riggs and De Muniz, JJ., join in this concurring opinion.