Argued and submitted July 3, 2001, reversed and remanded for entry of judgment granting post-conviction relief April 17, 2003

## WILLIAM DEAN BURDGE,
*Appellant,*

*v.*

## Joan PALMATEER,
Superintendent,
Oregon State Penitentiary,
*Respondent.*

### 97C-12207; A108298

67 P3d 397

Steven H. Gorham argued the cause and filed the brief for appellant.

Stacey RJ Guise, Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before Edmonds, Presiding Judge, and Armstrong and Brewer, Judges.

BREWER, J.

Edmonds, P. J., dissenting.

## BREWER, J.

Petitioner appeals from a judgment dismissing his petition for post-conviction relief. We write only to address petitioner's claim that his trial counsel was inadequate in failing to object to the imposition of sentences under ORS 137.635.[1] We conclude that petitioner has established that trial counsel's performance was constitutionally inadequate and that petitioner was prejudiced by that deficiency. Accordingly, we reverse.

Petitioner was convicted in 1994 of five criminal charges in three separate cases. The crimes were committed in the following order: Case No. 1 involved a burglary committed on October 12, 1993; Case No. 2 involved a burglary committed on January 9, 1994; and Case No. 3 involved a burglary and sex offenses committed on January 14, 1994. The cases were not tried in the order that the charged crimes were committed. Petitioner was first tried and convicted in Case No. 2. He was then tried and convicted in Case No. 1. Finally, he was tried and convicted in Case No. 3.

At a consolidated sentencing hearing, the trial court sentenced petitioner in the order in which the crimes were committed. Thus, petitioner was first sentenced in Case No. 1; the trial court then considered petitioner's conviction in Case No. 1 as supporting imposition of an ORS 137.635 sentence in Case No. 2. Finally, the court relied on petitioner's convictions in Cases No. 1 and 2 to support the imposition of

---

[1] ORS 137.635(1) provides:

"When, in the case of a felony described in subsection (2) of this section, a court sentences a convicted defendant who has previously been convicted of any felony designated in subsection (2) of this section, the sentence shall not be an indeterminate sentence to which the defendant otherwise would be subject under ORS 137.120, but, unless it imposes a death penalty under ORS·163.105, the court shall impose a determinate sentence, the length of which the court shall determine, to the custody of the Department of Corrections. Any mandatory minimum sentence otherwise provided by law shall apply. The sentence shall not exceed the maximum sentence otherwise provided by law in such cases. The convicted defendant who is subject to this section shall not be eligible for probation. The convicted defendant shall serve the entire sentence imposed by the court and shall not, during the service of such a sentence, be eligible for parole or any form of temporary leave from custody. The person shall not be eligible for any reduction in sentence pursuant to ORS 421.120 or for any reduction in term of incarceration pursuant to ORS 421.121."

ORS 137.635 sentences in Case No. 3. Petitioner's trial counsel did not object to the imposition of sentences under ORS 137.635 or assert that ORS 137.635 was inapplicable. On direct appeal, we affirmed the convictions without opinion. *State v. Burdge*, 137 Or App 437, 904 P2d 1093 (1995).

Thereafter, we decided *State v. Allison*, 143 Or App 241, 923 P2d 1224, *rev den*, 324 Or 487 (1996). In *Allison*, we examined the meaning of the phrase "previously been convicted" as used in ORS 137.635. We explained that, although there were several plausible interpretations of that phrase, the correct interpretation required that ORS 137.635 apply only to a person who has been convicted of one of the enumerated crimes *before committing* the crime for which the person was to be sentenced under that statute. *Id.* at 247-56. Under that interpretation, because all of petitioner's crimes in this case were committed before his first conviction, he was not subject to the imposition of sentences under ORS 137.635 for any of the crimes for which he was eventually convicted. Petitioner sought post-conviction relief, asserting, among other claims, that his trial counsel provided constitutionally inadequate legal assistance by failing to argue that ORS 137.635 did not apply to him. The post-conviction court denied relief.

We review the post-conviction court's judgment for errors of law and for evidence to support its findings. *Smart v. Maass*, 148 Or App 431, 434, 939 P2d 1184, *rev den*, 326 Or 62 (1997). To prevail on a claim of inadequate assistance of counsel, petitioner must establish by a preponderance of the evidence that his counsel failed to exercise reasonable professional skill and judgment in representing petitioner in the criminal proceedings that are the subject of his post-conviction case and that he suffered prejudice as a result of that failure. *Stevens v. State of Oregon*, 322 Or 101, 108, 902 P2d 1137 (1995); *see also Krummacher v. Gierloff*, 290 Or 867, 872, 627 P2d 458 (1981); *Chew v. State of Oregon*, 121 Or App 474, 477, 855 P2d 1120, *rev den*, 318 Or 24 (1993).

■ Petitioner reasserts on appeal that trial counsel was inadequate in failing to object to the imposition of sentences under ORS 137.635. Defendant responds that petitioner's trial counsel was not inadequate because, at the time of petitioner's sentencing, no appellate court had interpreted the

statutory language "previously been convicted." Accordingly, in defendant's view, the meaning of the statute was not "clearly settled," and reasonable counsel could have disagreed about whether to make an argument for the specific interpretation ultimately held to apply in *Allison. See Wells v. Peterson*, 315 Or 233, 236, 844 P2d 192 (1992). Further, in defendant's view, petitioner was correctly sentenced based on an understanding of the law at the time of sentencing in light of a then-recent Supreme Court case, *State v. Bucholz*, 317 Or 309, 855 P2d 1100 (1993), and counsel could not have been inadequate for not raising the issue.

In *Bucholz*, the question was whether, when a person is sentenced at the same time for multiple convictions arising out of different criminal episodes, the offenses first sentenced become a part of the defendant's criminal history for purposes of the subsequently sentenced convictions. The sentencing guidelines provided that "[a]n offender's criminal history is based upon the number of * * * convictions * * * in the offender's criminal history at the time the current crime or crimes of conviction is [*sic*] sentenced." The defendant in *Bucholz* pleaded guilty to two unrelated felonies that had been committed and charged at separate times. He was sentenced for both offenses in the same hearing. The court first sentenced the defendant on the first committed crime. It then determined that, under the sentencing guidelines, the first conviction was a part of the defendant's criminal history for purposes of sentencing on the second offense. We reversed the sentencing court, holding that "the legislative history demonstrates a legislative intent that convictions sentenced at the same time are *present* convictions that are not counted in the criminal history, irrespective of rules governing *prior* criminal history." *State v. Bucholz*, 113 Or App 705, 707, 834 P2d 456 (1992) (emphasis in original). The Supreme Court rejected our reasoning that criminal history was not to include convictions that were currently being sentenced. It explained:

"[T]he text of the adopted amendment permits consideration of any previous conviction occurring before 'the time the current crime * * * is sentenced.' Read literally, the sentence for the theft was imposed before the sentence for drug

delivery was imposed, albeit only a short time before. *Nothing in the wording of the criminal history rule excludes consideration of the conviction for a separately occurring crime merely because the two separate crimes are sentenced on the same day and in the same session of court.*"

*Bucholz*, 317 Or at 314 (emphasis added).

The text of ORS 137.635 provides for a sentence to be imposed under that section "[w]hen * * * a court sentences a convicted defendant who has previously been convicted" of certain felonies listed in ORS 137.635(2). Defendant contends that, in light of the Supreme Court's interpretation of the sentencing guidelines in *Bucholz*, it was sound reasoning for petitioner's trial counsel to anticipate that ORS 137.635 would be interpreted similarly, that is, that a defendant would be treated as having "previously been convicted" if the conviction occurred before sentencing. As noted in *Allison*, the phrasing "previously been convicted" plausibly could refer to a defendant who, *at any time before sentencing*, has been found guilty of a crime listed in ORS 137.635(2). 143 Or App at 247; *id.* at 259 (Leeson, J., concurring). Although a majority of this court ultimately rejected that interpretation in *Allison,* in light of *Bucholz*, which also involved the question of the effect of prior convictions on an enhanced sentence, we agree that trial counsel could reasonably have anticipated that, given the opportunity, the Supreme Court might interpret ORS 137.635 similarly. But that conclusion does not end our inquiry.

■     As defendant points out, at the time that the court sentenced petitioner, no reported appellate decision had addressed the issue decided by *Allison*. Although the administrative rule addressed in *Bucholz* involved sentencing, we held in *Allison* that the court's analysis in *Bucholz* was not applicable to an analysis of ORS 137.635. *Allison*, 143 Or App at 255. The meaning of the phrase "previously been convicted" as used in ORS 137.635 was an open question. Furthermore, as we explained in *Allison*, the statute was susceptible to more than one plausible interpretation. The question presented in this case, then, is how reasonable counsel must

go about the task of construing and arguing for the construction of a statute that has two or more plausible meanings and, thus, is ambiguous.[2]

Ultimately, the measure of the reasonableness of representation depends on the circumstances of the particular case. *See Krummacher*, 290 Or at 874 n 6. In *Krummacher*, the Supreme Court said that counsel must investigate the facts and inform him or herself with respect to the law "to the extent appropriate to the nature and complexity of the case." *Id.* at 875. Here, reasonable trial counsel could not have disagreed that it would have been beneficial to petitioner to assert that ORS 137.635 was not applicable to him because he had not "previously been convicted" of any crime that would support the application of that statute. *See Wells*, 315 Or at 236. That interpretation was a plausible reading of the statute. Because the statutory phrase had not yet been construed by the courts, no judicial interpretation overlay the text of the statute to elucidate its particular meaning. There were no tactical risks to petitioner in raising the issue of the inapplicability of the statute. And, finally, the potential benefits of success were substantial, as ultimately proved to be the case for the defendant in *Allison*. *See Layton v. Hall*, 181 Or App 581, 588, 47 P3d 898 (2002) (competent decision to raise, or to forgo, an objection may involve a variety of considerations, including the likelihood of success, the benefit to the client if successful, and any countervailing detriment if unsuccessful). In consideration of all of those circumstances, we conclude that reasonably competent defense counsel was required to raise the plausible interpretation of the statute that would have assisted petitioner in his defense. *See Haynes v. State of Oregon*, 121 Or App 395, 398, 854 P2d 949 (1993) (failure of defense counsel to assert at trial that parole officer was not a "corrections officer" within the meaning of ORS 163.208(1) demonstrated lack of professional skill and judgment, where the term had not been construed by courts).[3]

---

[2] An ambiguous statute by definition is one that has, at the first level of statutory construction, two or more "reasonable," that is, plausible, interpretations. *State v. Hval*, 174 Or App 164, 168-69, 25 P3d 958 (2001).

[3] In *Haynes*, we distinguished *Wells*, in which the court held that, because our decisions on the legal interpretation of the mandatory minimum sentencing

Although the dissent does not expressly state what it believes reasonable counsel must do when confronted with a statute that lacks a clear meaning, it does go to considerable lengths to explore the meaning of "reasonableness." Two of the dictionary meanings that the dissent proposes, "not [in conflict] with reason" and "within the bounds of reason," 187 Or App at 305 (Edmonds, P. J., dissenting), are accurate but not especially illuminating. The third dictionary definition, "not absurd," is of more questionable applicability. No case that we have located suggests that counsel's performance is reasonable merely because it is not absurd.

The dissent apparently believes that, if a statute is ambiguous, we must, as a separate inquiry, ask whether reasonable legal minds could differ about the number of plausible interpretations of it. For example, the dissent asserts that our conclusion is flawed because

"[a]nother interpretation [of the statute] (the one reached by the *Allison* majority) was deemed implausible by four judges of this court. Consequently, the majority finds itself in the awkward position of holding, in effect, that the judges joining in the *Allison* concurrence were not reasonable attorneys because of their failure to perceive the *Allison* majority's interpretation of the statute as plausible. If four judges on this court could conclude that the *Allison* majority's interpretation of ORS 137.635 was not plausible, clearly reasonable trial counsel could have come to that same conclusion."

187 Or App at 312 (Edmonds, P. J., dissenting). Later, the dissent says that, "At its bottom line, the majority's holding leaves no room for reasonable counsel to differ as to the meaning of the words in the statute or to make reasonable judgment calls about the plausibility of a particular interpretation." 187 Or App at 313 (Edmonds, P. J., dissenting). In the same vein, the dissent urges:

"When there is more than one reasonable interpretation of a statute and reasonable minds could differ about the number of plausible interpretations of the statute, it is inconsistent with the concept of 'reasonableness' to read into the

statutes had left the law "not clearly settled," reasonable counsel could have "disagreed" about whether to raise the legal argument that the petitioner's attorney did not make. *Haynes,* 121 Or App at 399; *Wells,* 315 Or at 236.

constitution a requirement that a reasonable attorney must perceive all plausible interpretations of a statute and advance the one most favorable to his client in order to furnish adequate assistance of counsel."

187 Or App at 315 (Edmonds, P. J., dissenting).

With respect, a separate inquiry into whether reasonable minds could differ about the number of plausible interpretations of an ambiguous statute, or whether judges who view certain interpretations as implausible are reasonable attorneys, leads to confusion, not clarity. The split in the *Allison* decision reflected a disagreement over which of three possible constructions of ORS 137.635 was correct. It is hardly surprising that a statute whose correct meaning is uncertain would produce separate opinions from this court, including one or more that reject even the *plausibility* of opposing interpretations.

We do not take issue with the dissent's view that "the concept of reasonableness does not by definition necessarily require a 'reasonable attorney' to anticipate every alternative meaning of a statute." 187 Or App at 305 (Edmonds, P. J., dissenting). Of course, reasonable attorneys can, and often do, differ as to which possible meaning of a statute is correct or, for that matter, how many plausible interpretations exist. However, lawyers representing criminal defendants, unlike judges, are expected to be advocates, not neutrals; they must undertake to discern and assert plausible interpretations of ambiguous statutes that would benefit their clients. When, as here, a statute is ambiguous, there is all the more reason—not less—for counsel to recognize an interpretation that favors his or her client. Any other view would produce a rule that, if a statute is ambiguous, reasonable counsel has little responsibility to discern, among its possible meanings, one that the courts might conclude is correct and that would favor his or her client. Such a rule cannot be correct. Reasonable counsel's responsibility cannot logically be fulfilled merely by stopping at the first possible construction that occurs to counsel, especially if it favors the adverse party. Nor is it fulfilled by asserting that four concurring judges in *Allison* rejected the majority's construction of the statute. Regardless of the reasonableness of that dispute

among the judges of this court, as far as the law is concerned the *Allison* majority's construction of the statute is more than plausible; it is correct.

We take issue with the dissent's view that our conclusion sets the performance bar higher than the constitution demands by making post-conviction relief available whenever counsel fails to assert the single correct interpretation of an ambiguous statute. 187 Or App at 315 (Edmonds, P. J., dissenting). The issue is not whether petitioner's counsel was required to divine the correct meaning of an ambiguous statute but, rather, whether he was required to discern and advance a plausible alternative meaning of the statute that would likely benefit his client. We conclude that he was. *See Layton,* 181 Or App at 588-89 (reasonable defense counsel is obliged not only to advance legal positions that are certain to succeed but also those that are less certain yet are reasonably promising). In this case, petitioner's counsel failed to discern and advance a construction of ORS 137.635(1) that was both plausible and correct and that would have benefitted petitioner.

Because that construction was correct, petitioner also was prejudiced. *See Layton,* 181 Or App at 589-90. Accordingly, petitioner is entitled to post-conviction relief.

Reversed and remanded for entry of judgment granting post-conviction relief.

**EDMONDS, P. J.,** dissenting.

The majority's ruling in this case will have significant consequences regarding the availability of post-conviction relief. In effect, the majority's decision articulates a rule of law that extends relief to convicted persons beyond previously recognized boundaries regarding the requirement that criminal defendants be furnished constitutionally adequate assistance of counsel. Because this case requires us to consider the meaning of the requirement for constitutionally adequate assistance of counsel, it is necessary to begin with an examination of the source of that requirement.

Article I, section 11, of the Oregon Constitution provides, in relevant part, that, in all criminal prosecutions, the accused shall have the right "to be heard by himself and

counsel[.]"[1] Article I, section 11 and its federal counterpart "call for an adequate performance by counsel of those functions of professional assistance which an accused person relies upon counsel to perform on his behalf." *Krummacher v. Gierloff*, 290 Or 867, 872, 627 P2d 458 (1981) (footnote omitted). Whether an attorney has adequately performed is necessarily decided on a case-by-case basis under the particular circumstances of a case. As the *Krummacher* court explained:

> "[I]f counsel exercises reasonable professional skill and judgment, a reviewing court will not second-guess the law[s] in the name of the constitution, but neither will the court ignore decisions made in the conduct of the defense which reflect an absence or suspension of professional skill and judgment."

290 Or at 875-76. "Reasonableness" is necessarily an abstract principle. The exercise of *reasonable* professional skill and judgment by an attorney connotes the exercise of skill or judgment that does "not [conflict] with reason," that is "not absurd," and that is "within the bounds of reason." *Webster's Third New Int'l Dictionary* 1892 (unabridged ed 1993).

In the abstract, the concept of "reasonableness," by definition, leaves room for disagreement about what is a plausible interpretation of words in a statute. Simply because there is disagreement about a statute's meaning does not mean that one view is "reasonable" and other views are "unreasonable." Different attorneys exercising reasonable skill and judgment could come to different and conflicting understandings of the meaning of a statute's words. Moreover, the concept of reasonableness does not by definition necessarily require a "reasonable attorney" to anticipate every alternative meaning of a statute. Depending on the text of a particular statute, it is foreseeable that reasonable people might differ not only on the meaning of the words in a statute but also on the number of plausible interpretations that exist.

---

[1] The Sixth Amendment to the United States Constitution provides a similar, if not identical, standard. It states, "In all criminal prosecutions, the accused shall enjoy the right * * * to have the Assistance of Counsel for his defence."

When considered in context, the juxtaposition of the word "reasonableness" and the words "absence of professional skill and judgment" presents, in reality, two sides of the same coin. Those phrases articulate a rather minimal, amorphous standard. Below that standard is the failure to exercise the level of skill that every reasonable attorney would employ. When an *absence* of the exercise of professional skill and judgment occurs, it is because the attorney's act or failure to act was "absurd," or "not within the bounds of reason," or conflicted with reason itself. Above the standard of minimal competency or "reasonableness," it is possible to have varying degrees of professional performance, including some that may be inconsistent with each other. The issue in this case turns on whether petitioner has met the burden of demonstrating that his trial counsel, as the result of the failure to object to the sentences that were imposed by the trial court, failed to meet the minimal standard of adequacy imposed by the state and federal constitutions.

ORS 137.635(1) provides:

"When, in the case of a felony described in subsection (2) of this section, a court sentences a convicted defendant who has *previously been convicted* of any felony designated in subsection (2) of this section, the sentence shall not be an indeterminate sentence to which the defendant otherwise would be subject under ORS 137.120, but, unless it imposes a death penalty under ORS 163.105, the court shall impose a determinate sentence the length of which the court shall determine, to the custody of the Department of Corrections. Any mandatory minimum sentence otherwise provided by law shall apply. The sentence shall not exceed the maximum sentence otherwise provided by law in such cases. The convicted defendant who is subject to this section shall not be eligible for probation. The convicted defendant shall serve the entire sentence imposed by the court and shall not, during the service of such a sentence, be eligible for parole or any form of temporary leave from custody. The person shall not be eligible for any reduction in sentence pursuant to ORS 421.120 or for any reduction in term of incarceration pursuant to ORS 421.121."

(Emphasis added.)

At the time of sentencing in October 1994, petitioner had been found guilty in the following cases: (1) Case No. 94-132, involving a crime committed by defendant on January 9, 1994, for which he was found guilty on June 13, 1994; (2) Case No. 94-057, involving a crime committed on October 12, 1993, for which defendant was found guilty on August 2, 1994; and (3) Case No. 94-058, involving a crime committed by defendant on January 14, 1994, for which he was found guilty on September 30, 1994.[2] The court first imposed sentence in Case No. 94-057. Then, relying on the conviction in Case 94-057, the court imposed sentence under ORS 137.635(1) in Case No. 94-132. Finally, relying on the convictions in Case Nos. 94-132 and 94-057, the court imposed sentence under ORS 137.635(1) in Case No. 94-058.

At the time that petitioner was convicted and sentenced, neither this court nor the Supreme Court had interpreted the meaning of "previously been convicted" as it is used in ORS 137.635(1). In 1996, two years after petitioner was sentenced, this court in *State v. Allison*, 143 Or App 241, 923 P2d 1224, *rev den*, 324 Or 487 (1996), interpreted the meaning of the phrase "previously been convicted" in the context of ORS 137.635 for the first time. After concluding that the word "convicted," as used in ORS 137.635, refers to the date when a defendant is found guilty or enters a plea of that nature, *id.* at 246, we evaluated the text and context of the statute to determine the meaning of the phrase "previously been convicted." We concluded that the phrase in its entirety was ambiguous. We explained:

> "So far as we can tell, there are at least three possibilities [regarding the meaning of the phrase]. First a defendant who has 'previously been convicted' could refer to a defendant who, *at any time before the sentencing*, has been found guilty of a crime listed in ORS 137.635(2). That is the construction urged by the state. It certainly is suggested by the phrasing of the statute * * *. Thus, any conviction, even a first-time conviction of a single crime would constitute a 'previous conviction' under the statute. Such a construction

---

[2] Defendant was convicted of first-degree burglary in Case No. 94-132; first-degree burglary in Case No. 94-057; and first-degree sodomy, first-degree burglary, and first-degree sexual abuse in Case No. 94-058.

is unlikely; it effectively reads out of the statute any distinction between a defendant's 'conviction' and a 'previous conviction.' As legislation is not always free of redundancy, however, we do not conclude that the construction is 'wholly implausible.'

"Second, the statute could be read to mean that a person who has just been found guilty of one of the listed crimes may be subject to determinate sentencing if, *at any time before that conviction*, the person has been convicted of a listed crime. That is the construction adopted by the concurrence. Under that construction, there is a distinction drawn between the 'conviction' that is the subject of the sentence yet to be imposed and the 'previous conviction.' That construction, however, does not draw any distinction as to when the crimes were committed. Thus, because of the fortuity of a court's scheduling or a prosecutor's method of charging, a defendant who committed two separate crimes may end up receiving a conviction on the later crime first, resulting in a 'previous conviction' on a subsequently committed crime. That certainly is an odd result. * * * Nevertheless, the second alternative is at least superficially consistent with the statutory language and plausibly could be what the voters intended. We do not, therefore, reject it as being wholly implausible.

"Third, the statute could be read to mean that a person who has just been found guilty of one of the crimes listed in ORS 137.635(2) may be subject to the statute if he or she had been found guilty of another listed crime, not merely any time before sentencing, but *before commission of the crime for which defendant is being sentenced*. That is the construction advanced by defendant. As in the case of the second alternative construction, there is a distinction maintained between a 'conviction' and a 'previous conviction.' In contrast with the second alternative, however, this one does not lead to any absurd or unlikely results."

*Id.* at 247-48 (emphasis in original; citations omitted).

In light of the three plausible interpretations of the phrase "previously been convicted," we turned to the legislative history of ORS 137.635. Because the statute was enacted by initiative, its legislative history included materials such as the 1988 Voters' Pamphlet and newspaper accounts referring to the measure. We concluded:

"Examining the text of ORS 137.635 in the light of the legislative history, it becomes evident that only one of the three alternative constructions of the statute is tenable. The first, requiring sentencing under the statute even for a first-time conviction of one of the predicate crimes, directly conflicts with the legislative history, which describes as the purpose of the enactment the imposition of tougher sentences for 'repeat' offenders. A first-time offender convicted of a single felony is not, in any sense, a 'repeat' offender.

"* * * * *

"Nor can the second construction, the one adopted by the concurrence, be squared with the history of the statute. That construction would require sentencing under the statute even when a defendant who has committed two criminal acts is convicted on the second act first. It also would require sentencing under the statute when a defendant has engaged in a single criminal episode that gives rise to multiple charges in a single indictment. Those results do not comport with the apparent purpose of the act, which was to impose tougher penalties on offenders who, having already been convicted of one crime, do not respond to the reformative influences of the criminal justice process and instead commit further crimes. * * * Accordingly, we reject the second of the possible constructions of the statute.

"That leaves the third alternative, under which a defendant is subject to sentencing under the statute only if he or she has been convicted of a crime listed in the statute before committing the crime for which sentencing is about to take place. * * * It is, therefore, the only plausible construction of ORS 137.635 that is consistent with the voters' intentions as revealed by the statute's text, context and legislative history."

*Id.* at 254-56.

Judge Leeson, in her concurrence in *Allison*, disagreed with the majority's analysis. In her view, "the plain language of the statute suggests two alternatives: a defendant must have been convicted of one crime *before sentencing* for the second crime or *before conviction* of the second crime." *Id.* at 256 (Leeson, J., concurring) (emphasis added). She criticized the majority for accepting the defendant's contention that there was a third alternative, asserting that "[t]he statute says nothing about *commission* of another crime." *Id.* at

256 (Leeson, J., concurring) (emphasis added). According to the concurrence, the majority read a requirement into the statute that was not in its text. Thus, the concurrence argued that the majority's interpretation was at odds both with rules of statutory construction and with what the voters intended. The concurrence then analyzed the legislative history of the statute in light of the fact that it considered the first two alternatives to be the *only* plausible interpretations of the statute. It concluded that the only construction supported by the sources of material available to the voters at the time that the measure was adopted was the second alternative: that the phrase "previously been convicted" means that a defendant must have been convicted of a crime listed in ORS 137.635(2) before being convicted of the crime for which the ORS 137.635 sentence is imposed. Judges Deits, Riggs, and De Muniz joined in Judge Leeson's concurrence.

Here, the trial court relied on petitioner's "previous conviction" in Case No. 94-057 to impose an ORS 137.635 sentence in Case No. 94-132 and petitioner's "previous convictions" in Case Nos. 94-132 and 94-057 to impose an ORS 137.635 sentence in Case No. 94-058. Defendant was found guilty in all three cases before he was sentenced in October 1994. If the words "previously been convicted" in ORS 137.635(1) are given the meaning that the defendant is found guilty at any time before sentencing, then there was no ground for objection by counsel. According to the *Allison* majority, that interpretation of the statute was a plausible interpretation at the time. 143 Or App at 247.

Under the interpretation of the statute that the *Allison* majority reached, a defendant must have been convicted of the first offense before the commission of the offense for which an ORS 137.635 sentence is to be imposed. Under that interpretation, the imposition of an ORS 137.635 sentence in Case No. 94-132 was improper because petitioner had not been convicted in Case No. 94-057 before he committed the crime in Case No. 94-132. The same is true for the sentence in Case No. 94-058; petitioner had not been convicted in Cases Nos. 94-132 and 94-057 before his commission of the offense at issue in Case No. 94-058. It is that interpretation that the majority holds should have been advanced by

trial counsel because it would have been most beneficial to petitioner. However, the *Allison* concurrence considered that interpretation of the term "previously been convicted" implausible. It reasoned that the *Allison* majority's interpretation "reads into the statute a requirement that the statute does not contain and one I do not believe was intended." 143 Or App at 257 (Leeson, J., concurring). Had trial counsel reasoned as did the *Allison* concurrence, he, as reasonable counsel, would not have made the argument advanced by the majority because he would have reasonably believed it to be implausible.

The *Allison* concurrence advanced and ultimately adopted a different plausible interpretation of ORS 137.635. Had trial counsel adopted that interpretation, an objection to the sentences imposed by the court would have been of little or no benefit. Petitioner was found guilty in Case No. 94-057 after he was found guilty in Case No. 94-132. Under the concurrence's view of the statute, "previously been convicted" meant petitioner must have been found guilty of a crime listed in ORS 137.635(2) before being found guilty of the crime for which the ORS 137.635 sentence was imposed. Thus, an ORS 137.635 sentence should not have been imposed in Case No. 94-132 under that interpretation. However, there was arguably nothing to be gained by an objection. Under the concurrence's interpretation, if the trial court was intent on imposing sentences under ORS 137.635, it had merely first to impose sentence in Case No. 94-132, then impose sentence in Case No. 94-057, using the conviction in Case No. 94-132 as the predicate for an ORS 137.635 sentence, and lastly, impose sentence in Case No. 94-058, using the sentences in Case Nos. 94-132 and 94-057 as predicates for that sentence.[3]

---

[3] Petitioner's counsel may have even reasonably agreed with the court's decision to sentence petitioner in Case No. 94-057 first, as that order of sentencing was arguably beneficial to petitioner. In its sentencing memorandum, the state explained:

"I.   Case [No.] 94-057 should be sentenced first.

"Although neither the Supreme Court nor the Court of Appeals has held or suggested that convictions must be sentenced in the precise chronological order that the defendant committed the underlying crimes, it is the State's position that the Court should do so in this situation. The State does not want

The above analysis demonstrates that this is a case where there were several reasonable interpretations of ORS 137.635(1) available when trial counsel failed to make any objection. Reasonable minds could have concluded that any objection would have had little or no ultimate benefit to petitioner. Another interpretation (the one reached by the *Allison* majority) was deemed implausible by four judges of this court. Consequently, the majority finds itself in the awkward position of holding, in effect, that the judges joining in the *Allison* concurrence were not reasonable attorneys because of their failure to perceive the *Allison* majority's interpretation of the statute as plausible. If four judges on this court could conclude that the *Allison* majority's interpretation of ORS 137.635 was not plausible, clearly, reasonable trial counsel could have come to that same conclusion. What those facts taken together demonstrate is that trial counsel's failure to object was not unreasonable. Said another way, the failure to object was not "in conflict with reason," was not "absurd," and was within "the bounds of reason." That is particularly true when there is reasonable debate about the number of plausible interpretations.

The majority says, "Reasonable counsel's responsibility cannot logically be fulfilled merely by stopping at the first possible construction that occurs to counsel, especially if it favors the adverse party." 187 Or App at 303. However, the issue is not whether reasonable counsel may stop at the "first possible construction that occurs to counsel" but rather whether reasonable counsel may arrive at a particular interpretation of a statute and believe that interpretation to be *correct* and, therefore, decide not to advocate other interpretations, particularly those that he or she reasonably concludes are *implausible*. Also, the majority says, "reasonable

---

to raise an appellate issue that it sought out of order convictions for the purpose of obtaining a high criminal-history score for an earlier-in-time crime. The State did not try the cases out of order for that purpose. There is no law that requires the cases to be sentenced in the order that they were tried.

"Case [No.] 94-132 * * * was tried first by the State because the evidence was stronger than the evidence available in [Case No. 94-057]. It was a tactical decision for trial. It * * * was not done to seek an advantage at sentencing. Each case should be sentenced in chronological order of when [petitioner] committed the crime to assure that [petitioner] is not disadvantaged in any manner."

trial counsel could not have disagreed that it would have been beneficial to petitioner to assert that ORS 137.635 was not applicable to him[.]" 187 Or App at 301. With respect, the majority misses the point. Whether the advancement of a particular interpretation of the statute would have been beneficial to petitioner is not the test for inadequate assistance of counsel where there is more than one reasonable interpretation of the statute. Moreover, the fact that the interpretation adopted by the *Allison* concurrence did not garner a majority in that case does not make it an "unreasonable" interpretation. Similarly, the fact that the *Allison* concurrence considered the majority's interpretation in that case "implausible" illustrates that reasonable minds could differ about the plausibility of the various interpretations of the statute. At its bottom line, the majority's holding leaves no room for reasonable counsel to differ as to the meaning of the words in the statute or to make reasonable judgment calls about the plausibility of a particular interpretation. Rather, the majority holds trial counsel to a higher standard to stay within the bounds of reason; he or she must perceive and advance the interpretation that would be most beneficial to the client, even if a reasonable mind could reject that interpretation as implausible.[4]

I have found no Oregon case that supports the majority's narrow view of the meaning of "reasonable professional skill and judgment" or that holds, expressly or implicitly, that trial counsel's failure to consider alternative interpretations of an ambiguous statute or to investigate the legislative history of a statute constitutes inadequate assistance of counsel. *Haynes v. State of Oregon*, 121 Or App 395, 854 P2d 949 (1993), on which the majority relies, has little precedential value to the proper analysis in this case. In *Haynes*, the defendant was charged with assaulting a public safety officer, specifically, a corrections officer. Trial counsel,

---

[4] This court should follow the lead of the United States Supreme Court in *Engle v. Issac*, 456 US 107, 131, 102 S Ct 1558, 71 L Ed 2d 783 (1982), and refuse to "adopt a rule that would require trial counsel either to exercise extraordinary vision or to object to every aspect of the proceedings in the hope that some aspect might mask a latent * * * claim." As the Court observed in that case, "the Constitution guarantees criminal defendants only a fair trial and a competent attorney. It does not insure that defense counsel will recognize and raise every conceivable [objection]." *Id.* at 134.

although aware of the issue, did not raise the question of whether a juvenile parole officer was a corrections officer under the statute. That decision was based on counsel's belief that, because a juvenile parole officer was employed by what was then the Corrections Division, the officer must be a corrections officer. We reasoned, "That analysis is superficial at best." *Id.* at 399. Looking at the *text* and *context* of the statute, we found only one plausible construction of the statute: that a juvenile parole officer is not a corrections officer because the officer does not supervise anyone in a place of confinement. The statutory analysis was self-evident and, "[b]ecause the term had not been construed by the courts, a competent defense attorney at least would have raised the issue[.]" *Id.* at 399. In sum, the controlling fact in *Haynes* that distinguishes it from this case is that it concerned a statute whose meaning was evident on its face.[5]

Despite the ambiguity of ORS 137.635(1), the heart of the majority's position is that, "[b]ecause the statutory phrase had not yet been construed by the courts [at the time of petitioner's sentencing and] no judicial interpretation overlay the text of the statute to elucidate its particular meaning," then defense counsel was required to raise any and every plausible interpretation of the statute that would have assisted petitioner in his defense. 187 Or App at 301. When understood in the context of the standard of "reasonable professional skill and judgment," the majority's proposition constitutes a substantive change in and an expansion of the remedy of post-conviction relief. Heretofore, the failure of trial counsel to contend that a statute's language prohibited a sentence was *not* inadequate assistance of counsel when, "at the time of trial[,] the meaning of the statute was not clearly settled." *Wells v. Peterson*, 315 Or 233, 236, 844 P2d 192 (1992); *see also Lovelace v. Zenon*, 159 Or App 158, 161-62, 976 P2d 575 (1999), *rev den*, 329 Or 589 (2000) (holding that, because the argument that the defendant had a

---

[5] The same is true of *Layton v. Hall*, 181 Or App 581, 47 P3d 898 (2002), cited by the majority, which involved facts similar to those in *Haynes.* In that case, we held that the petitioner's trial counsel afforded inadequate assistance of counsel by failing to object to a sentence that exceeded the length allowed by law. *On its face,* OAR 213-005-0002(4) prohibited a post-prison supervision term that, when added to a prison term, exceeded the statutory maximum indeterminate sentence for the crime of conviction.

right to have a jury decide whether a criminal act seriously endangered another was "well-settled" and "analytically straightforward" and because "the precedent supporting [the rule] was well established" and "available and apparent at the time of petitioner's trial, an effective defense attorney would have raised the issue"); *Turner v. Maass*, 103 Or App 109, 795 P2d 617, *rev den*, 310 Or 547 (1990) (whether adequate assistance of counsel is provided depends on the state of the law at the time counsel acted and not whether the Supreme Court has subsequently impliedly overruled Court of Appeals precedent). Hereafter, under the majority's view of the standard for adequacy of counsel, the availability of post-conviction relief exists where statutes are unclear on their face and where reasonable people differ on what are plausible interpretations.

As the Supreme Court pointed out in *Krummacher*, "[t]he constitution gives no defendant the right to a perfect defense[.]" 290 Or at 875. When there is more than one reasonable interpretation of a statute and reasonable minds could differ about the number of plausible interpretations of the statute, it is inconsistent with the concept of "reasonable-ness" to read into the constitution a requirement that a reasonable attorney perceive all plausible interpretations of a statute and advance the one most favorable to his client in order to furnish adequate assistance of counsel. Even with the availability of the source materials that this court had and, after a careful and lengthy period of analysis,[6] we could not unanimously agree on what was a plausible interpretation of ORS 137.635. The imposition by the majority of such a standard not only lowers the bar for the proof necessary for post-conviction relief; it requires that trial counsel, before the decision in *Allison*, was required to perceive and adopt an interpretation of ORS 137.635(1) that some reasonable persons considered implausible.

For the above reasons, I dissent.

---

[6] *Allison* was argued and submitted for decision on February 28, 1996, and we issued our opinion on August 28, 1996.