Argued and submitted April 8, affirmed October 6, 2004

# PEDRO ALCAZAR,
*Appellant,*

*v.*

Jean HILL,
Superintendent,
Eastern Oregon Correctional Institution,
*Respondent.*

CV02-0401; A120060

98 P3d 1121

Brian Patrick Conry argued the cause and filed the brief for appellant.

Daniel J. Casey, Assistant Attorney General, argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Haselton, Presiding Judge, and Linder and Ortega, Judges.

HASELTON, P. J.

## HASELTON, P. J.

Petitioner appeals from a judgment denying him post-conviction relief. ORS 138.510 - 138.680. He raises myriad arguments as to the alleged deficiencies of criminal trial counsel, and we reject most of those arguments without published discussion. We write only to address petitioner's contentions that pertain to the proper use of trial interpreters and the applicability of the Code of Professional Responsibility for Interpreters in the Oregon Courts (the interpreters' code) with respect to the admissibility of certain testimony. In particular, petitioner contends that trial counsel was constitutionally inadequate for failing to object to (1) alleged "vouching" testimony given by a police-retained interpreter who translated one of petitioner's interviews with the police; (2) testimony by the investigating detective recounting petitioner's statements during that interview as contemporaneously interpreted by the interpreter; and (3) the use of the trial interpreter both to assist petitioner and to interpret for a Spanish-speaking witness. We reject those arguments and, accordingly, affirm.

The facts material to petitioner's claims are as follows: In April 1999, petitioner was under investigation for having sexually abused his young daughter, M. As part of that investigation, Beaverton Police Detective Robert Usery interviewed petitioner twice, on April 10 and April 19. Because petitioner spoke Spanish, and Usery did not, Usery retained the assistance of a Spanish-speaking interpreter for each interview. At the April 10 interview, petitioner denied having had any sexual contact with M.

Nancy Leone, a certified court interpreter, interpreted the April 19 interview. At the beginning of that interview, Usery told petitioner that he did not believe that petitioner had been absolutely truthful on April 10 and asked him to discuss the allegations further. Petitioner conceded to Usery that approximately one year earlier he had taken a bath with M and two of his sons. After Usery urged petitioner to be completely candid about any sexual contact, petitioner told Usery that, around the same time, M had told petitioner that one of his sons had sexually abused her and that, in

response, petitioner had examined M's vagina with his finger. Petitioner also told Usery that he had asked M whether her brother had penetrated her with his penis and that, when M seemed confused by the question, he had exposed his penis to her to help clarify what he meant.

After the police interviews, the state subpoenaed Leone to testify both in front of the grand jury and, later, during a pretrial suppression hearing. In both proceedings, Leone testified about her qualifications and verified the accuracy of her interpretation as summarized in Usery's reports from the April 19 interview.

In August 1999, petitioner was tried to a jury on one count of first-degree rape, ORS 163.375, two counts of first-degree sodomy, ORS 163.405, one count of first-degree sexual penetration, ORS 163.411, and one count of first-degree sexual abuse, ORS 163.427. At the beginning of trial, a court-appointed interpreter, Ignatio Escudero, was sworn in to interpret for petitioner. Before the state called the first witness, the court instructed the jury:

> "You are now hearing a trial in which an interpreter will translate for one or more of the participants. The interpreter is required to remain neutral. The interpreter is required to translate between the English and Spanish language accurately and impartially to the best of the interpreter's skill and judgment. You must evaluate interpreted testimony as you would any other testimony. That is you must not give interpreted testimony any greater or lesser weight than you would if the witness had spoken English."

Usery was the first witness. He testified without objection about his two investigatory interviews with petitioner. Usery testified that, during the April 10 interview, petitioner had denied having had any sexual contact with M. Usery further testified that, during the second interview, petitioner had admitted to taking a bath with M and had also admitted that, in response to M's alleged report of abuse by her brother, he had examined her vagina and exposed himself to her. Defense counsel did not object to that testimony. On cross-examination, defense counsel focused his inquiry on whether Usery had engaged in deceptive, confusing, or overbearing interviewing techniques in interrogating plaintiff.

During the state's case-in-chief, Escudero, who had been acting as petitioner's court-appointed interpreter, interpreted the testimony of one of the state's witnesses, M's grandmother, for the court and the jury. Before Escudero performed that task, the court told the jury that petitioner's counsel did not object to Escudero, "who is the Court's interpreter," interpreting the testimony of a state witness because "[petitioner's] ability to speak English was sufficient enough" that petitioner could let counsel know if a problem arose.

Petitioner testified in his own defense. He contradicted Usery's recounting of the April 19 interview and denied making many of the statements Usery had attributed to him. In rebuttal, the state called Leone in response to petitioner's cross-examination of Usery and his denials regarding the content of the April 19 interview. During her testimony, Leone recounted portions of petitioner's statements from the interview. To counter defense counsel's cross-examination of Usery, the prosecutor asked Leone, "What was Detective Usery's demeanor like while he was speaking to [petitioner]?" Leone responded, "100 percent kind, total gentleman, very friendly."

The jury convicted petitioner on all counts. On direct appeal, we affirmed. *State v. Alcazar*, 174 Or App 564, 27 P3d 535, *rev den*, 332 Or 631 (2001).

Petitioner sought post-conviction relief and, as set forth below in greater detail, raised various arguments detailing counsel's failures to provide him with constitutionally adequate representation. The bulk of his arguments to the post-conviction court centered on Leone's involvement in the investigation and proceedings below and on trial counsel's failure to raise objections based on Leone's conduct. In particular, petitioner alleged that Leone's rebuttal testimony regarding Usery's demeanor during the interview constituted objectionable "vouching" for Usery's credibility. Further, petitioner asserted that, by testifying on behalf of the state, Leone violated a number of provisions of the interpreters' code and those violations rendered her interpretation—and, consequently, Usery's testimony regarding the April 19 interview—unreliable and inadmissible.[1] Finally, petitioner

---

[1] In support of his argument, petitioner submitted to the post-conviction court a sworn affidavit by Maria Cristina Castro, a past president of the Court

asserted that criminal trial counsel improperly failed to object to and, indeed, acquiesced in, the trial court's use of Escudero for witness interpretation. The post-conviction court denied the petition. On appeal, petitioner raises similar arguments.

We review the judgment for errors of law and for evidence supporting the post-conviction court's findings. *Smart v. Maass*, 148 Or App 431, 434, 939 P2d 1184, *rev den*, 326 Or 62 (1997). "To prevail on a claim of inadequate assistance of counsel, petitioner must establish by a preponderance of the evidence that his counsel failed to exercise reasonable professional skill and judgment in representing petitioner in the criminal proceedings that are the subject of his post-conviction case and that he suffered prejudice as a result of that failure." *Burdge v. Palmateer*, 187 Or App 295, 298, 67 P3d 397, *rev allowed*, 336 Or 125 (2003) (citations omitted).

As noted, many of petitioner's interpreter-related arguments depend on the premise that, by testifying for the state, Leone violated the interpreters' code. To place those arguments into context, we begin with a brief overview of that code.

ORS 45.272 to 45.297 govern interpreter testimony, and ORS 45.273 states the general policy:

"It is declared to be the policy of this state to secure the constitutional rights and other rights of persons who are unable to readily understand or communicate in the English language because of a non-English-speaking cultural background or a disability, and who as a result cannot be fully protected in administrative and court proceedings unless qualified interpreters are available to provide assistance."

In furtherance of that policy, ORS 45.288(4) directs the Supreme Court to "adopt a code of professional responsibility for interpreters" that will be "binding on all interpreters who provide interpreter services in the courts or in adjudicatory

---

Interpreters Association of Oregon. Castro rendered an opinion that Leone's testimony on behalf of the state did, in fact, violate the interpreters' code. As explained below, we disagree because the code is inapposite to Leone's involvement in this case and, consequently, she could not—and did not—violate any code provision. *See* 195 Or App at 510-13.

proceedings before agencies." The interpreters' code, adopted by the Supreme Court in May 1995,[2] contains 11 canons that establish standards for, among other things, quality of interpretation, interpreter impartiality, representation of qualifications, demeanor, confidentiality, and reporting of violations. By its own terms, the interpreters' code applies to "all persons, agencies, and organizations who administer, supervise use of, or deliver interpreting services to the courts." The preamble incorporates much of the policy expressed in ORS 45.273:

> "Many persons who come before the courts are partially or completely excluded from full participation in the proceedings because of limited English proficiency or a speech or hearing impairment. It is essential that the resulting communications barrier be removed, as far as possible, so that these persons are placed in the same position as similarly situated persons for whom there is no such barrier. An interpreter is sworn in as an officer of the court. As an officer of the court, an interpreter is a neutral and impartial participant who assists the court in ensuring that court proceedings and court support services are accessible and function efficiently and effectively. The court interpreter is a skilled professional, therefore, who fulfills an essential role in the administration of justice."

(Footnote omitted.)

As pertinent here, petitioner alleges that Leone violated the following three code provisions when she testified for the state:

> "3.  IMPARTIALITY AND AVOIDANCE OF CONFLICT OF INTEREST—COURT OR PROCEEDING INTERPRETER
>
> "The interpreter shall be impartial and unbiased and shall refrain from conduct that may give an appearance of bias or conflict of interest. The interpreter shall disclose to the judge any real bias or interest in the parties or witnesses in a case, or any situation or relationship that may

---

[2] The interpreters' code was based, in part, on the final report of the Supreme Court Task Force on Racial and Ethnic Issues in the Judicial System and the National Center for State Courts' "Model Code of Professional Responsibilities for Interpreters in the Judiciary."

be perceived by the court, any of the parties, or any witnesses as a bias or interest in the parties or witnesses in a case.

"\* \* \* \* \*

"7. RESTRICTION OF PUBLIC COMMENT

"The interpreter shall not publicly discuss, report, or offer an opinion concerning a matter in which the interpreter is or has been engaged, even when that information is not privileged or required by law to be confidential.

"\* \* \* \* \*

"10. DUTY TO REPORT ETHICAL VIOLATIONS

"The interpreter shall report to the court any actions by any persons that may impede the interpreter's compliance with any law, any provision of this code, or any other official policy governing court interpreting and sight translating."

As we understand his arguments, petitioner first contends that criminal trial counsel should have objected to Leone's rebuttal testimony that Usery was "100 percent kind, total gentleman, very friendly," as improper "vouching" testimony—that is, an impermissible comment on Usery's credibility. Petitioner also contends that counsel should have objected to that testimony because Leone's comments violated Canon 7 and Canon 10. We disagree because Leone's testimony was not objectionable either as impermissible "vouching" or, alternatively, as somehow violating the interpreters' code.

■ Leone did not impermissibly "vouch" for Usery's credibility. Instead, she simply recounted what she heard and observed, as any other witness under subpoena would be obliged to do. *See* OEC 701. The fact that her testimony corroborated the accuracy of Usery's account, and, particularly, Usery's recounting of petitioner's statements—and, thus, circumstantially buttressed Usery's credibility—does not constitute impermissible "vouching." Indeed, if that were so, any time a witness testified to facts corroborating another witness' account, that corroboration would be improper. *See State v. Charboneau*, 323 Or 38, 47, 913 P2d 308 (1996) (noting that "parties often bolster the credibility of their witnesses indirectly and implicitly through the presentation of

corroborating evidence"). Similarly, Leone's description of Usery as "100 percent kind, total gentleman, very friendly," did not constitute objectionable "vouching." That testimony described Usery's demeanor during the interview, not his credibility, and was given in direct response to the prosecutor's question rebutting defense counsel's implication that Usery had been overbearing in the April 19 interview. *See* 195 Or App at 506.[3]

■     Petitioner next contends that trial counsel should have objected to Leone's rebuttal testimony on the grounds that that testimony violated the interpreters' code. Defendant responds, in part, that the interpreters' code is inapplicable—and, consequently, Leone did not violate the code—because (1) Leone was not the court-appointed interpreter in petitioner's criminal case, and (2) by its own terms, the interpreters' code does not govern the conduct of freelance interpreters providing services outside the courts.

Defendant is correct. The interpreters' code expressly governs the conduct only of interpreters providing services "in the courts or in adjudicatory proceedings before agencies." ORS 45.288(4). Leone was not acting in that capacity either when she interpreted the April 19 police interview or when she testified as a fact witness.

As noted, the statutory source of the interpreters' code is ORS 45.288. That statute authorizes the Supreme Court to "adopt a code of professional responsibility for interpreters" that will be "binding on all interpreters who provide

---

[3] Petitioner also contends that the *trial court*, by giving the pretrial instruction pertaining to court interpreters quoted above, 195 Or App at 505, impermissibly "vouched" for *Leone's* credibility—and that trial counsel was deficient for failing to object to that instruction. Petitioner asserts:

"Surely, the jury could have mistakenly applied this instruction to Ms. Leone's testimony and taken it as a court guarantee of the truthfulness of her testimony. The jurors may have taken it as a direction by the court to credit Ms. Leone's testimony as neutral and unbiased. This is equivalent in this case to directing a verdict for the prosecution in this case."

That argument is meritless. At the time the instruction was given, at the beginning of trial, it could only have referred to Escudero—and not to Leone, who did not testify until the following day as a rebuttal witness. Thus, trial counsel had no reason to except to the instruction as given. Petitioner does not contend that his counsel was deficient for failing to request some qualification or limitation of that instruction after Leone testified. In all events, the instruction, by its use of the definitive article, *i.e.*, "*the* interpreter," referred only to the court interpreter, Escudero.

interpreter services *in the courts or in adjudicatory proceed-ings* before agencies." ORS 45.288 (emphasis added). Thus, the code is designed to effectuate the statutory policy of fully protecting the rights of non-English speaking persons "in administrative and court proceedings." ORS 45.273. Consistently with that mandate, the interpreters' code itself defines an interpreter as an "officer of the court * * * who *assists the court* in ensuring that *court proceedings* and *court support services* are accessible and function efficiently and effectively." (Emphasis added.)

The content of the individual canons corroborates that understanding. For example, the two code provisions governing "impartiality and avoidance of conflict of interest," refer explicitly, and exclusively, to a "court or proceeding interpreter" (Canon 3), and an "interpreter appointed to work with [a] state-paid, appointed attorney" (Canon 4).[4] Conversely, none of the provisions of the interpreters' code refers to, or purports to govern, the conduct of interpreters who are performing independent services for a law enforcement agency or, for that matter, in any forum other than the court system and administrative agencies. Thus, contrary to petitioner's suggestion, the code does not apply to all interpreter services.[5]

■     Petitioner next argues that criminal trial counsel was deficient for failing to object to the admissibility of Usery's trial testimony and, in particular, his reiteration of petitioner's statements from the April 19 interview. Petitioner acknowledges that interpreted statements repeated in court "would normally be considered reliable [and admissible] statements." However, petitioner continues, "due to Ms. Leone's abandonment of her neutral, unbiased interpreter role and her abandonment of the canons of ethics regulating the role of interpreters[, petitioner's] statements to

---

[4] Other canons are similar. For example, Canon 5 specifies, "The interpreter shall conduct himself or herself in a manner *consistent with the dignity of the court* and shall be as unobtrusive as possible." (Emphasis added.) Similarly, Canon 9 requires the interpreter to "assess at all times his or her ability to deliver interpretation services" and to "immediately convey" any reservations about that ability "*to the court*." (Emphasis added.)

[5] Given our analysis, we need not determine whether, or in what circumstances, a court interpreter's violation of the code may result in exclusion either of the interpreter's testimony or of another person's recounting of statements interpreted by the interpreter.

Det. Usery were inadmissible double hearsay that should have been excluded from evidence." Thus, petitioner does not contend that, as a *general* matter, a police officer's recounting of a defendant's statements, as interpreted by a third party, constitutes inadmissible double hearsay—*i.e.*, that, although the defendant's statements by themselves would not be hearsay, OEC 801(4)(b)(A), the interpreter's interpretation would not fall within any hearsay exception. *Accord State v. Letterman*, 47 Or App 1145, 616 P2d 505 (1980), *aff'd by an equally divided court*, 291 Or 3 (1981).[6] Rather, petitioner's argument is much narrower: Plaintiff argues only that Usery's recounting of petitioner's statements was inadmissible hearsay because Leone's alleged violations of the interpreters' code rendered her interpretation unreliable.

Petitioner's argument as to the inadmissibility of Usery's testimony—and his counsel's alleged default in not objecting to that testimony—thus depends on the premise that Leone somehow violated the interpreters' code. However, as we have just explained, that premise is false. The

---

[6] In *Letterman*, we held that "testimony by a police officer of statements made by defendant to the officer through an interpreter were properly admitted over defendant's timely objection." 47 Or App at 1147. After surveying the law of other jurisdictions, we concluded that the officer's statements were admissible because they satisfied "the two requirements common to most, if not all, of the exceptions to the hearsay rule: (1) circumstantial guarantees of trustworthiness, and (2) necessity for use of the out-of-court statement." *Id.* at 1151 (citations omitted).

We note that *Letterman* preceded passage of the "catch-all" hearsay exception, OEC 803(28). The rule, in some ways, mirrors the standard described in *Letterman*, but in other ways is more demanding. *See* OEC 803(28) (requiring the proponent to meet six prerequisites to admission, including, as in *Letterman*, circumstantial guarantees of trustworthiness, and, further, that the statement be "more probative on the point for which it is offered than any other evidence that the proponent can procure through reasonable efforts"); Laird C. Kirkpatrick, *Oregon Evidence* § 803.29, Art VIII-154-55 (4th ed 2002) (discussing requirements). We are unaware of any Oregon appellate decision addressing the applicability of OEC 803(28) to interpreted statements. Other jurisdictions have treated such testimony in varying ways, as admissible under the rules of evidence or as inadmissible double hearsay. *See State v. Robles*, 157 Wis2d 55, 458 NW2d 818 (Wis Ct App 1990), *aff'd sub nom, State v. Martin*, 162 Wis 2d 883, 470 NW2d 900 (Wis 1991) (testimony admissible as party admission; interpreter deemed defendant's agent absent evidence to negate that agency); *Durbin v. Hardin*, 775 SW2d 798 (Tx Crim App 1989) (testimony inadmissible, refusing to adopt *Letterman*'s reasoning); *State v. Terrazas*, 162 Ariz 357, 783 P2d 803 (Ariz Ct App 1989) (admitting testimony under "catchall" exception); *State v. Spivey*, 710 SW2d 295 (Mo Ct App 1986) (testimony admissible as party admission under "agency" theory); *State v. Randolph*, 698 SW2d 535 (Mo Ct App 1985) (same); *State v. Lopez*, 29 Wash App 836, 631 P2d 420 (1980) (absent evidence of trustworthiness, interpreted statements inadmissible).

code regulates the provisions of interpreter services in court and administrative proceedings and does not purport to govern the rendition of such services in other contexts.

Leone was hired by the Beaverton Police Department to interpret the April 19 interview. That interview was not a "court proceeding," and, indeed, at that point there was no pending prosecution, defendant was not put under oath, and he had not yet been arrested. Likewise, Leone was not acting as a "court interpreter" when she subsequently testified, pursuant to subpoena, before the grand jury, at the pretrial hearing, and at trial regarding facts she observed during that interview. Leone performed no interpreting services in those proceedings; she merely recounted what she had previously seen and heard. For that reason, her actions were not governed by the interpreters' code, and any objection to her involvement in the proceedings—and, concomitantly, to Usery's testimony based on Leone's alleged violation of the interpreters' code—would have been properly denied.

Finally, petitioner argues that counsel impermissibly acquiesced in Escudero interpreting the testimony of a single Spanish-speaking witness without appointing a new interpreter for petitioner. The post-conviction court determined that "petitioner was able to understand all proceedings [at trial]" and, consequently, "an objection would not have been well founded or well received, particularly given that petitioner was not prejudiced by proceeding [with one interpreter]." The record supports those findings and, accordingly, we reject petitioner's argument on appeal. *See Yeager v. Maass*, 93 Or App 561, 564, 763 P2d 184 (1988), *rev den*, 307 Or 340 (1989) ("Our duty on appeal is to determine whether the facts that the post-conviction court found are supported by the record and whether its legal conclusion, that petitioner was not unfairly prejudiced by any of the complained of conduct by his attorney, is correct.").

Affirmed.